IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| GULFPORT ENERGY CORPORATION, *et al.*,[1] | ) ) ) | Case No. 20-35562 (DRJ) |
| Debtors. | ) ) ) ) | (Jointly Administered) |

**DEBTORS' OBJECTION TO SHAREHOLDER'S
MOTION TO DISMISS THE CHAPTER 11 CASES**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this objection (the "Objection") to the *Motion for Gulfport Energy Bankruptcy Dismissal* and attached letters [Docket No. 231] (collectively, the "Shareholder Motion"), filed by Ralph J. Zimbouski (the "Shareholder"), an individual who asserts that he and his wife hold over 100,000 shares of stock in Gulfport Energy Corporation ("Gulfport"). In support of this Objection, the Debtors state:

**Preliminary Statement**

1. The Debtors, like other natural gas companies, have been grappling with low natural gas prices since late 2019.[2] Entering 2020, the Debtors faced a number of near-term liquidity challenges, including reduced revenue from lower forecasted natural gas prices, high

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Gulfport Energy Corporation (1290); Gator Marine, Inc. (1710); Gator Marine Ivanhoe, Inc. (4897); Grizzly Holdings, Inc. (9108); Gulfport Appalachia, LLC (N/A); Gulfport MidCon, LLC (N/A); Gulfport Midstream Holdings, LLC (N/A); Jaguar Resources LLC (N/A); Mule Sky LLC (6808); Puma Resources, Inc. (6507); and Westhawk Minerals LLC (N/A). The location of the Debtors' service address is: 3001 Quail Springs Parkway, Oklahoma City, Oklahoma 73134.

[2] A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Quentin R. Hicks, Chief Financial Officer and Executive Vice President of Gulfport Energy Corporation, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 40] (the "First Day Declaration") incorporated by reference herein. Capitalized terms used but not defined herein shall have the meaning ascribed to them in the First Day Declaration.

levels of cash interest due on the Debtors' unsecured notes, and midstream costs that, in certain cases, resulted in reduced margin versus selling natural gas in-basin.  *See* First Day Declaration, ¶ 6.  The Debtors were also party to certain firm transportation contracts that required the Debtors to pay fixed capacity reservation charges regardless of whether the Debtors received any benefit from that capacity.  *Id.*

2. The Debtors' capital structure also posed numerous challenges, including from the Debtors' senior secured revolving credit facility (the "RBL Credit Facility").  *Id.* at ¶ 7.  There was the risk of an adverse borrowing base redetermination, a maturity in late 2021, and the likelihood that a significant deleveraging would be required to secure any extension of the maturity date.  *Id.*

3. As 2020 progressed, the Debtors' financial situation devolved.  The Debtors, along with the entire energy industry, encountered a year of unique and unprecedented challenges due to the COVID-19 health crisis.  *Id.* at ¶ 8.  Public health and safety measures dramatically decreased energy demand that, in addition to global market volatility, forced over two dozen major exploration and production companies and related service providers to file for chapter 11 protection this year.  *Id.*  The Debtors were not immune to these trends:  Gulfport's common stock dropped by 90.1% from mid-March to October 7, 2020.  *Id.*

4. In the midst of negotiations with potential capital contributors, the Debtors were facing increasingly tightening liquidity and looming deadlines related to their capital structure.  In August 2020, the Debtors filed a form 10-Q that included a going-concern qualification, which would become an event of default under the RBL Credit Facility in February 2021 when the Debtors filed their annual report with the U.S. Securities and Exchange Commission.  *Id.* at ¶ 17.  The timing of these chapter 11 cases was further dictated by the Debtors' loss of liquidity and the risk of a full scale hedge liquidation that threatened to increase the Debtors' secured debt by $183 million.  *Id.* at ¶¶ 18, 20, 43.

5. On November 13, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are working to make these chapter 11 cases a success for as many constituents as possible, and they welcome the active participation of the Debtors' equity holders in the process.

6. Dismissal is a drastic remedy that is entirely unwarranted. Dismissal would likely result in an immediate liquidation to the detriment of the Debtors' 259 employees, their secured and unsecured creditors, and their common shareholders. The Debtors filed their voluntary petitions in good faith and have continued to work cooperatively with all stakeholders to achieve a resolution to maximize the value of their estates. Regardless of the assertions made by the Shareholder, dismissal of these chapter 11 cases cannot create more value than continuing these chapter 11 cases. The Court should deny the Shareholder Motion.

## Objection

### I. Dismissal Is Not Warranted Under Section 1112(b) of the Bankruptcy Code.

7. The Shareholder has failed to sustain its burden to dismiss the Debtors' chapter 11 cases. Section 1112(b) of the Bankruptcy Code provides that a chapter 11 case may be dismissed where the movant establishes "cause." *See* 11 U.S.C. § 1112(b). Such relief "is a drastic measure" that should not be granted if premature. *See In re Dark Horse Tavern,* 189 B.R. 576, 580 (Bankr. N.D.N.Y. 1995). The burden rests on "[t]he party seeking dismissal . . . [to prove] cause by a preponderance of the evidence." *In re TMT Procurement Corp.*, 534 B.R. 912, 918 (Bankr. S.D. Tex. 2015); *see also In re Baribeau*, 603 B.R. 797, 802 (Bankr. W.D. Tex. 2019) (stating the movant must demonstrate that there is cause for dismissal). Courts consider cause for dismissal of a chapter 11 case "based on the totality of the circumstances in the case." *In re Starmark Clinics, LP*, 388 B.R. 729, 736 (Bankr. S.D. Tex. 2008); *In re Devine*, 131 B.R. 952, 955 (Bankr. S.D. Tex. 1991) (denying dismissal after considering "all circumstances"). For a voluntary petition

to be filed in bad faith, a debtor's conduct must "rise to the level of egregiousness necessary to conclude that the reorganization process is being perverted . . . ." *Matter of Little Creek Dev. Co.*, 779 F.2d 1068, 1073 (5th Cir. 1986).

8. Here, cause does not exist to dismiss the chapter 11 cases. The Shareholder makes a number of vague claims regarding the Debtors' prepetition actions, including allegations of fraud and misconduct. *See* Docket No. 231. The Shareholder claims that the Debtors "could have solved cash flow problems and avoided bankruptcy" had they taken different actions and that with "300 million dollars cash . . . provided by the Bondholders" the Debtors could exit chapter 11 and pay their bonds due 2023 through 2026 through the ordinary course of business and the use of hedges. *See id.* The Shareholder offers no evidence to support these contentions and offers no evidence that the Debtors filed these chapter 11 cases in anything other than good faith. The First Day Declaration demonstrates the financial challenges and reasonable decision-making process that led to these chapter 11 cases.

9. The Debtors filed these chapter 11 cases after extensive negotiations with their stakeholders. Prior to filing these chapter 11 cases, the Debtors explored various liability management alternatives to address their liquidity and capital structure challenges, including, but not limited to: (i) deleveraging M&A transactions; (ii) a potential "uptiering" exchange with their unsecured bondholders; (iii) an amendment of the RBL Credit Facility to allow for the issuance of new second lien notes; (iv) a number of plans regarding alternative financing from third parties; (v) potential transactions with several of the Debtors' equity holders; and (vi) a discounted debt-for-debt exchange with an ad hoc group of the Debtors' unsecured notes. *See* First Day Declaration, ¶¶ 12–16.

10. Ultimately, despite extensive and good faith negotiations with a variety of third parties, no alternative option emerged that would have materially improved the Debtors' liquidity

and leverage positions. Simply put, the out-of-court alternatives available to the Debtors were not viable methods to deleverage the Debtors' balance sheets. *Id.* at ¶ 13. The Debtors ultimately rejected these alternatives because the transactions would have only *increased* the amount of secured debt on the company.

11. Despite these challenges, the Debtors filed these chapter 11 cases with a restructuring support agreement ("RSA") in place and a plan of reorganization ("Plan") supported by a substantial majority of the holders of their funded debt. *Id.* at ¶ 23. The RSA and the Plan provide the Debtors with a clear path forward to resolve the significant challenges presented by both their overleveraged capital structure and high fixed costs. Pursuant to the Plan, the Debtors propose to shed approximately $1.24 billion in funded debt, receive at least $50 million in a new equity investment, and expect to reduce annual midstream costs by more than $60 million. *Id.* at ¶ 25. The Debtors already have a commitment from the lenders under the RBL Credit Facility for the exit financing facility that will provide the Debtors with the financing necessary to emerge from bankruptcy. *Id.* Upon consummation of these restructuring transactions, the Debtors will be well-positioned to face further challenges and poised for long-term success.

12. There is no cause for dismissal of these chapter 11 cases. The Debtors filed these chapter 11 cases neither in bad faith nor for any improper purpose. To the contrary, these chapter 11 cases represent necessary steps the Debtors are taking to resolve their liquidity issues, delever their balance sheet, reduce their high fixed costs, and chart a course for future success post-emergence. Given the cooperation and successful negotiations that occurred prepetition amongst the Debtors and numerous stakeholders, the Debtors are positioned to work expeditiously toward confirmation and emergence from chapter 11. The RSA and Plan provide the Debtors with a clear path forward to resolve the significant challenges they face, challenges that otherwise could have been fatal to the Debtors' businesses and hundreds of jobs.

WHEREFORE, the Debtors request that the Court deny the relief requested in the Shareholder Motion and grant the Debtors any further relief to which they may be entitled.

Houston, Texas
December 15, 2020

Respectfully Submitted,

*/s/ Matthew D. Cavenaugh*

| | |
|---|---|
| **JACKSON WALKER L.L.P.** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Veronica A. Polnick (TX Bar No. 24079148) | Edward O. Sassower, P.C. |
| Cameron A. Secord (TX Bar No. 24093659) | Steven N. Serajeddini, P.C. (admitted *pro hac vice*) |
| 1401 McKinney Street, Suite 1900 | 601 Lexington Avenue |
| Houston, Texas 77010 | New York, New York 10022 |
| Telephone: (713) 752-4200 | Telephone: (212) 446-4600 |
| Facsimile: (713) 752-4221 | Facsimile: (212) 446-4800 |
| Email: mcavenaugh@jw.com | Email: edward.sassower@kirkland.com |
| vpolnick@jw.com | steven.serajeddini@kirkland.com |
| csecord@jw.com | |

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

-and-

Christopher S. Koenig (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:   chris.koenig@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**Certificate of Service**

I certify that on December 15, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

I further certify that on December 15, 2020, I caused a copy of the foregoing document to be served via the following means to the following addresses:

| Address | Means |
| --- | --- |
| Mr. Ralph J. Zimbouski, rjzimbouski@gmail.com | Email |
| Mr. Ralph J. Zimbouski, P.O. Box 103, New Hartford, CT 06057 | US First Class Mail |

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh