

ENTERED
12/18/2020

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GULFPORT ENERGY CORPORATION, *et al.*,[1] | ) | Case No. 20-35562 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) |  |

# FINAL ORDER
## (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (II) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, (III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION FIRST LIEN SECURED PARTIES PURSUANT TO SECTIONS 361, 362, 363, AND 364 OF THE BANKRUPTCY CODE, (IV) GRANTING LIENS AND SUPERPRIORITY CLAIMS, AND (V) MODIFYING THE AUTOMATIC STAY

Upon the motion, dated November 15, 2020 (the "DIP Motion"), of the DIP Borrower (as defined below), and the other debtors and debtors-in-possession (collectively, the "Debtors"), in the above-referenced chapter 11 cases (the "Cases"), seeking entry of a final order (this "Final Order") pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(l), 364(c)(2), 364(c)(3), 364(d)(l), 364(e), 507, and 552 of chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1, 4001-1(b), 4002-1(i), and 9013-1 of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Gulfport Energy Corporation (1290); Gator Marine, Inc. (1710); Gator Marine Ivanhoe, Inc. (4897); Grizzly Holdings, Inc. (9108); Gulfport Appalachia, LLC (1290); Gulfport MidCon, LLC (1290); Gulfport Midstream Holdings, LLC (1290); Jaguar Resources LLC (1290); Mule Sky LLC (6808); Puma Resources, Inc. (6507); and Westhawk Minerals LLC (1290).  The location of the Debtors' service address is:  3001 Quail Springs Parkway, Oklahoma City, Oklahoma 73134.

Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules"), and the *Procedures for Complex Cases in the Southern District of Texas* (the "Complex Case Procedures"), that, among other things:

(i)      authorizes Gulfport Energy Corporation, a Delaware corporation ("Gulfport") designated as the "Borrower" under, and as defined in, the DIP Credit Agreement (as defined below) (the "DIP Borrower") to obtain, and all of Gulfport's existing and future domestic subsidiaries, including, without limitation, the guarantors party to the Prepetition First Lien Credit Agreement (as defined below) (collectively, the "DIP Guarantors") to unconditionally guaranty, jointly and severally, the DIP Borrower's obligations in respect of senior secured priming and superpriority postpetition financing, which consists of a revolving credit facility for up to $262,500,000.00 (the "DIP Revolver Facility" and together with the Roll Up (as defined below), collectively, the "DIP Facility" and the loans extended under the DIP Facility, including the Roll-Up DIP Loans (as defined below) the "DIP Loans"), pursuant to the terms of (x) this Final Order, (y) that certain Debtor-in-Possession Credit Agreement (as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms, the "DIP Credit Agreement"),[2] by and among the DIP Borrower, The Bank of Nova Scotia, as administrative agent and collateral agent (in such capacities, the "DIP Agent"), and other financial institutions as such may become from time to time party to the DIP Credit Agreement as "Lenders" under, and as defined in, the DIP Credit Agreement (the "DIP Lenders," and together with the DIP Agent and any other party to which DIP Obligations (as defined below) are owed, the "DIP Secured Parties"), substantially in the form attached to the Interim Order (as defined below) as Schedule 1 thereto,

---

[2]   Unless otherwise specified herein, all capitalized terms used herein without definition shall have the respective meanings given to such terms in the DIP Credit Agreement.

and (z) any and all other Loan Documents (as defined in the DIP Credit Agreement, and together with the DIP Credit Agreement, collectively, the "DIP Loan Documents"), to:  (A) fund, among other things, ongoing working capital, general corporate expenditures, and other financing needs of the Debtors, (B) provide letters of credit for the account of any of the Debtors, (C) convert to DIP Obligations under the DIP Loan Documents $157,500,000.00 of the outstanding principal amount of the Loans (as defined in the Prepetition First Lien Credit Agreement (as defined below)) held by the DIP Lenders ratably in accordance with their respective shares of the DIP Revolver Facility (the "Roll Up," and the holders of such rolled up Prepetition First Lien Obligations, the "Roll-Up DIP Lenders," and such converted Loans, the "Roll-Up DIP Loans"), (D) pay certain transaction fees and other costs and expenses of administration of the Cases, and (E) pay fees and expenses (including reasonable attorneys' fees and expenses) and interest and other payments owed to the DIP Secured Parties under the DIP Loan Documents and this Final Order;

(ii)      approves the terms of, and authorizes the Debtors to execute and deliver, and perform under, the DIP Loan Documents and authorizes and directs the Debtors to perform such other and further acts as may be required in connection with the DIP Loan Documents and this Final Order;

(iii)      subject to the Carve Out, grants (x) to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, Liens (as defined in the DIP Credit Agreement) on all of the DIP Collateral (as defined below) pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, which Liens shall be senior to the Primed Liens (as defined below) and the First Lien Adequate Protection Liens (as defined below), and shall be junior solely to any valid, enforceable, and non-avoidable Liens that are (A) in existence on the Petition Date (as defined below), (B) either perfected as of the Petition Date or perfected subsequent to the Petition Date

solely to the extent permitted by section 546(b) of the Bankruptcy Code, and (C) senior in priority to the Prepetition First Liens (as defined below) to the extent provided under and after giving effect to any intercreditor or subordination agreement (all such Liens, collectively, the "Prepetition Prior Liens") and (y) to the DIP Secured Parties, pursuant to section 364(c)(1) of the Bankruptcy Code, superpriority administrative claims having recourse to all prepetition and postpetition property of the Debtors' estates, now owned or hereafter acquired and the proceeds of each of the foregoing, including[3] any Debtor's rights under section 549 of the Bankruptcy Code and the proceeds thereof, and the proceeds of Avoidance Actions (as defined below), but, for the avoidance of doubt, not the Avoidance Actions themselves.  For the avoidance of doubt, the Prepetition Prior Liens shall include any valid, perfected, enforceable, and non-avoidable liens (as such term is defined in section 101(37) of the Bankruptcy Code) possessed by QBE Insurance Corporation, United States Fire Insurance Company, Everest Reinsurance Company, and U.S. Specialty Insurance Company (collectively, the "Insurance Companies"), if any, including arising from rights of subrogation, setoff, or recoupment and in existence and senior in priority to the Prepetition First Liens as of the Petition Date;

    (iv)    authorizes the Debtors to use "cash collateral," as such term is defined in section 363 of the Bankruptcy Code (the "Cash Collateral"), including Cash Collateral in which the DIP Secured Parties and/or the Prepetition First Lien Secured Parties (as defined below) have a Lien or other interest, in each case whether existing on the Petition Date, arising pursuant to the Interim Order (as defined below), this Final Order, or otherwise;

---

[3]    As used herein, the words "including" or "include" and variations thereof shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation."

(v)      subject to the terms of this Final Order, vacates the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Final Order;

(vi)     authorizes the DIP Borrower to borrow under the DIP Facility and authorizes the DIP Guarantors to unconditionally guaranty such obligations jointly and severally, *provided* that any amounts repaid under the DIP Revolver Facility may be reborrowed, subject to the terms of the DIP Loan Documents and this Final Order;

(vii)    subject to the Carve Out, solely to the extent of any diminution in value of their collateral, grants the Prepetition First Lien Secured Parties (as defined below), as of the Petition Date and in accordance with the relative priorities set forth herein, the Prepetition First Lien Adequate Protection (as defined below), which consists of, among other things, First Lien Adequate Protection Liens (as defined below) and First Lien Adequate Protection Superpriority Claims (as defined below);

(viii)   except to the extent of the Carve Out, waives certain rights of the Debtors to surcharge collateral pursuant to section 506(c) of the Bankruptcy Code;

(ix)     provides that the DIP Secured Parties and the Prepetition First Lien Secured Parties are entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply; and

(x)      provides for the immediate effectiveness of this Final Order and waives any applicable stay (including under Bankruptcy Rule 6004) to permit such immediate effectiveness.

The interim hearing on the DIP Motion (the "Interim Hearing") having been held by this Court (as defined below) on November 16, 2020, and the final hearing on the motion (the "Final Hearing") having been held by this Court on December 18, 2020, pursuant to Bankruptcy Rules

2002, 4001(b)(2), and 4001(c)(2), and all applicable Bankruptcy Local Rules; and having considered the DIP Motion, the DIP Credit Agreement, the *Declaration of Douglas McGovern in Support of the Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Obtain Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing the Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (III) Granting Adequate Protection to the Prepetition First Lien Secured Parties Pursuant to Sections 361, 362, 363, and 364 of the Bankruptcy Code, (IV) Granting Liens and Superpriority Claims, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing* [Docket No. 29] (the "McGovern Declaration"), the *Declaration of Quentin R. Hicks, Executive Vice President and Chief Financial Officer of Gulfport Energy Corporation, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 40] (the "First Day Declaration"), and the evidence submitted or proffered at the Interim Hearing and the Final Hearing; and in accordance with Bankruptcy Rules 2002, 4001(b), 4001(c), 4001(d), and 9014, all applicable Bankruptcy Local Rules, and the Complex Case Procedures, notice of the DIP Motion and the Interim Hearing having been provided pursuant to Bankruptcy Rule 4001(b)(1)(C), all applicable Bankruptcy Local Rules, and the Complex Case Procedures and as set forth in paragraph C of this Final Order; an order approving the DIP Motion on an interim basis [Docket No. 114] (the "Interim Order") having been entered on November 16, 2020; and it appearing that approval of the relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors and otherwise is fair and reasonable and in the best interests of the Debtors, their creditors, their estates and all parties in interest, and is essential for the continued operation of the Debtors' business and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Credit

Agreement is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THIS COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

A.      **Petition Date**.  On November 13, 2020 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Texas, Houston Division (this "Court"). The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  On November 27, 2020, the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") [Docket No. 248].  As of the date hereof, no trustee or examiner has been appointed in the Cases.

B.      **Jurisdiction and Venue**.  This Court has subject matter jurisdiction over the Cases, the DIP Motion and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and other predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, the Bankruptcy Local Rules, and the Complex Case Procedures.

C.      **Notice**.   The Final Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001 and Section J of the Complex Case Procedures.  Notice of the Final Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile,

---

[4]   Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as appropriate, pursuant to Bankruptcy Rule 7052.

electronic mail, overnight courier or hand delivery, to certain parties in interest, including: (a) the U.S. Trustee; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) the DIP Agent and counsel thereto; (d) the Prepetition First Lien Agent (as defined below) and counsel thereto; (e) the Prepetition First Lien Lenders (as defined below); (f) the United States Attorney's Office for the Southern District of Texas; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (j) the state attorneys general for states in which the Debtors conduct business; (k) UMB Bank, N.A., as successor trustee (the "Indenture Trustee") under those certain Indentures of the Borrower dated as of April 21, 2015 (in respect of the 6.625% Senior Notes due 2023), October 14, 2016 (in respect of the 6% Senior Notes due 2024), December 21, 2016 (in respect of the 6.375% Senior Notes due 2025), and October 11, 2017 (in respect of the 6.375% Senior Notes due 2026) (collectively, the "Senior Notes"), (l) the ad hoc group of holders of Senior Notes (the "Ad Hoc Noteholder Group"); and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002. Under the circumstances, such notice of the DIP Motion, the relief requested therein and the Final Hearing complies with Bankruptcy Rule 4001(b), (c), and (d), the Bankruptcy Local Rules, and the Complex Case Procedures and no other notice need be provided for entry of this Final Order.

     D.     **Debtors' Stipulations Regarding the DIP Facility**. The Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree (the "Debtors' DIP Stipulations") as follows:

     (i)     Release of Claims. Upon entry of the Interim Order, each Debtor and its estate was deemed to have forever waived, discharged, and released each of the DIP Secured

Parties and their respective affiliates, assigns, or successors and the respective members, managers, equity holders, affiliates, agents, attorneys, financial advisors, consultants, officers, directors, employees, and other representatives of the foregoing (all of the foregoing, collectively, the "<u>DIP Secured Party Releasees</u>") from any and all "claims" (as defined in section 101(5) of the Bankruptcy Code), counterclaims, causes of action (including causes of action in the nature of "lender liability"), defenses, setoff, recoupment, other offset rights, and other rights of disgorgement or recovery (but, for the avoidance of doubt, excluding claims for fraud, as determined in the final and non-appealable judgment of a court of competent jurisdiction) against any and all of the DIP Secured Party Releasees, whether arising at law or in equity, relating to and/or otherwise in connection with the DIP Obligations, the DIP Liens (as defined below), or the debtor-creditor relationship between any of the DIP Secured Parties (in their capacities as such), on the one hand, and any of the Debtors, on the other hand; *provided* that nothing herein shall relieve any DIP Secured Party Releasee from fulfilling its obligations or commitments under the DIP Facility.

E. **<u>Debtors' Stipulations Regarding the Prepetition First Lien Facility</u>**. Subject only to the rights of parties in interest that are specifically set forth in Paragraph 5 below, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree (Paragraph E hereof shall be referred to herein collectively as the "<u>Debtors' First Lien Stipulations</u>") as follows:

(i) <u>Prepetition First Lien Credit Facility</u>. Pursuant to that certain Amended and Restated Credit Agreement, dated as of December 27, 2013 (as amended, restated, or otherwise modified from time to time prior to the Petition Date, the "<u>Prepetition First Lien Credit Agreement</u>," and collectively with any other agreements and documents executed or delivered in

connection therewith, including the "Loan Documents" as defined therein, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition First Lien Loan Documents"), among (a) Gulfport, as Borrower (as defined therein), (b) the Lenders (as defined therein) from time to time party thereto (collectively, the "Prepetition First Lien Lenders"), and (c) The Bank of Nova Scotia, as administrative and collateral agent (in such capacities, the "Prepetition First Lien Agent" and, together with the Prepetition First Lien Lenders and any other party to which Prepetition First Lien Obligations (as defined below) are owed, the "Prepetition First Lien Secured Parties"), the Prepetition First Lien Secured Parties agreed to extend loans and other financial accommodations to, and issue letters of credit for the account of, the Borrower pursuant to the Prepetition First Lien Loan Documents.  All obligations of the applicable Debtors arising under the Prepetition First Lien Credit Agreement (including the "Obligations" as defined therein, whether or not arising under the Prepetition First Lien Loan Documents) or the other Prepetition First Lien Loan Documents shall collectively be referred to herein as the "Prepetition First Lien Obligations."

    (ii) <u>Prepetition First Liens and Prepetition First Lien Collateral</u>.  Pursuant to the Collateral Agreement (as defined in the Prepetition First Lien Credit Agreement) (as such documents were amended, restated, supplemented, or otherwise modified from time to time prior to the Petition Date, the "Prepetition First Lien Collateral Documents"), by and among Gulfport and its subsidiaries party thereto (collectively, the "Grantors") and the Prepetition First Lien Agent, each Grantor granted to the Prepetition First Lien Agent, for the benefit of the Prepetition First Lien Agent and the other Prepetition First Lien Secured Parties, to secure the Prepetition First Lien Obligations, first priority security interests in and continuing Liens (the "Prepetition First Liens") on substantially all of each such Grantor's assets and properties (which, for the avoidance of doubt,

includes Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising.  All "Collateral" (as defined in the Prepetition First Lien Credit Agreement) granted or pledged by such Grantors pursuant to any Prepetition First Lien Collateral Document or any other Prepetition First Lien Loan Document shall collectively be referred to herein as the "Prepetition First Lien Collateral."  As of the Petition Date, (a) the Prepetition First Liens (I) are legal, valid, binding, enforceable, and perfected Liens, (II) were granted to, or for the benefit of, the Prepetition First Lien Secured Parties for fair consideration and reasonably equivalent value, (III) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except for the priming contemplated herein), and (IV) are subject and subordinate only to (A) the DIP Liens (as defined below), (B) the Carve Out (as defined below), and (C) the Prepetition Prior Liens, and (b) (I) the Prepetition First Lien Obligations constitute legal, valid, and binding obligations of the applicable Debtors, enforceable in accordance with the terms of the applicable Prepetition First Lien Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (II) no setoffs, recoupments, offsets, defenses, or counterclaims to any of the Prepetition First Lien Obligations exist, (III) no portion of the Prepetition First Lien Obligations or any payments made to any or all of the Prepetition First Lien Secured Parties are subject to avoidance, disallowance, disgorgement, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in section 101(5) of the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (IV) the obligations of each Guarantor (as defined in the Prepetition First Lien Credit Agreement) under each Guaranty, the Collateral Documents, and the other Prepetition First Lien Loan Documents shall continue in full force and effect to unconditionally guaranty the

Prepetition First Lien Obligations notwithstanding any use of Cash Collateral permitted hereunder or any financing and financial accommodations extended by the DIP Secured Parties to the Debtors pursuant to the terms of the Interim Order, this Final Order, or the DIP Loan Documents.

(iii)    <u>Amounts Owed under Prepetition First Lien Loan Documents</u>.  As of the Petition Date, the applicable Debtors owed the Prepetition First Lien Secured Parties, pursuant to the Prepetition First Lien Loan Documents, without defense, counterclaim, reduction or offset of any kind, in respect of Loans made, letters of credit issued, and other financial accommodations made by the Prepetition First Lien Secured Parties, an aggregate principal amount of not less than $599.2 million,[5] *plus* all accrued and hereafter accruing and unpaid interest thereon and any additional fees, expenses (including any reasonable attorneys', accountants', appraisers', and financial advisors' fees and expenses that are chargeable or reimbursable under the Prepetition First Lien Loan Documents), and other amounts now or hereafter due under the Prepetition First Lien Loan Documents.

(iv)    <u>Release of Claims</u>.  Subject to Paragraph 5 below, each Debtor and its estate shall be deemed to have forever waived, discharged, and released each of the Prepetition First Lien Secured Parties and their respective affiliates, assigns, or successors and the respective members, managers, equity holders, affiliates, agents, attorneys, financial advisors, consultants, officers, directors, employees, and other representatives of the foregoing (all of the foregoing, collectively, the "<u>Prepetition First Lien Secured Party Releasees</u>") from any and all "claims" (as defined in section 101(5) of the Bankruptcy Code), counterclaims, causes of action (including causes of action in the nature of "lender liability"), defenses, setoff, recoupment, other offset rights, and other rights of disgorgement or recovery (but, for the avoidance of doubt, excluding claims for

---

[5]    The obligations comprise $355.5 million in Loans and $243.7 million in undrawn letter of credit exposure.

fraud, as determined in the final and non-appealable judgment of a court of competent jurisdiction) against any and all of the Prepetition First Lien Secured Party Releasees, whether arising at law or in equity, relating to and/or otherwise in connection with the Prepetition First Lien Obligations, the Prepetition First Liens, or the debtor-creditor relationship between any of the Prepetition First Lien Secured Parties (in their capacities as such), on the one hand, and any of the Debtors, on the other hand, including (a) any recharacterization, subordination, avoidance, disallowance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state law, federal law, or municipal law and (b) any right or basis to challenge or object to the amount, validity, or enforceability of the Prepetition First Lien Obligations or any payments or other transfers made on account of the Prepetition First Lien Obligations, or the validity, enforceability, priority, or non-avoidability of the Prepetition First Liens securing the Prepetition First Lien Obligations, including any right or basis to seek any disgorgement, avoidance, or recovery of payments of cash or any other distributions or transfers previously received by any of the Prepetition First Lien Secured Party Releasees.

(v)     _Cash Collateral_.  All of the Debtors' cash, including any cash in deposit accounts of the Debtors, wherever located, constitutes Cash Collateral of the Prepetition First Lien Agent and the other Prepetition First Lien Secured Parties.

F.     _Debtors' Stipulations Regarding the Interim Borrowing_.  Pursuant to the Interim Order, the Court authorized, among other things, (i) the Debtors to borrow in a single draw under the DIP Facility in an aggregate outstanding principal amount up to $90,000,000, (ii) the DIP Guarantors to unconditionally guaranty such obligations jointly and severally, and (iii) the granting of the DIP Protections (as defined below).  Pursuant to the Interim Order, the Court authorized and empowered the Debtors to execute and deliver the DIP Loan Documents and to incur and to

perform all of the DIP Obligations in accordance with, and subject to, the terms of the Interim Order and the DIP Loan Documents. On November 17, 2020, the DIP Credit Agreement was executed, and the Debtors were authorized to borrow on the terms and conditions set forth in the DIP Loan Documents and in the Interim Order.

G. **Findings Regarding the DIP Facility**.

(i)     Need for Postpetition Financing. The Debtors have an immediate and critical need to obtain the full benefit of the DIP Facility and use Cash Collateral to, among other things, permit the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers, and customers, to make payroll, to make capital expenditures, to satisfy other working capital and operational needs, to fund the costs and expenses of the Cases, to fund the Terminated Call Repayment (as defined below), and to otherwise preserve the value of the Debtors' estates. The Debtors' access to sufficient working capital and liquidity through the use of Cash Collateral and borrowing under the DIP Facility is vital to a successful reorganization and/or to otherwise preserve the enterprise value of the Debtors' estates. Immediate and irreparable harm will be caused to the Debtors and their estates if financing is not obtained and permission to use Cash Collateral is not granted, in each case in accordance with the terms of this Final Order and the DIP Loan Documents.

(ii)     No Credit Available on More Favorable Terms. Based on the DIP Motion and on the record presented to this Court at the Interim Hearing and Final Hearing, the Debtors (a) have been and continue to be unable to obtain financing on more favorable terms from sources other than the DIP Secured Parties under the DIP Loan Documents and this Final Order, (b) are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or secured credit allowable only under sections 364(c)(1), 364(c)(2), or

364(c)(3) of the Bankruptcy Code, (c) are unable to obtain secured credit under section 364(d)(1) of the Bankruptcy Code without (x) granting to the DIP Secured Parties the rights, remedies, privileges, benefits, and protections provided herein and in the DIP Loan Documents, including the DIP Liens and the DIP Superpriority Claims (each as defined below), (y) allowing the DIP Secured Parties to provide the loans, letters of credit, and other financial accommodations under the DIP Facility (including the Roll-Up DIP Loans) on the terms set forth herein and in the DIP Loan Documents, and (z) granting to the Prepetition First Lien Secured Parties the rights, remedies, privileges, benefits, and protections provided herein and in the DIP Loan Documents, including the Prepetition First Lien Adequate Protection and the conversion of certain Prepetition First Lien Obligations into the Roll Up (all of the foregoing described in clauses (x), (y), and (z) above, collectively, the "<u>DIP Protections</u>").

H.     **Financing**.  The DIP Secured Parties and the Prepetition First Lien Secured Parties are willing, as applicable, to continue to provide financing to the Debtors and/or consent to the use of Cash Collateral by the Debtors, subject to (i) the entry of this Final Order and (ii) the terms and conditions of the DIP Loan Documents.

I.     **Adequate Protection for Prepetition First Lien Secured Parties**. The Prepetition First Lien Secured Parties have agreed to permit the Debtors' continued use of the Prepetition First Lien Collateral, including the Cash Collateral, subject to the terms and conditions set forth herein, including the protections afforded a party acting in "good faith" under section 364(e) of the Bankruptcy Code.  In addition, the DIP Facility contemplated hereby provides for a priming of the Primed Liens (as defined below) pursuant to section 364(d) of the Bankruptcy Code. The Prepetition First Lien Secured Parties are entitled to the adequate protection as set forth herein, including pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code.  Based on the DIP

Motion and on the record presented to this Court at the Interim Hearing and Final Hearing, the terms of the proposed adequate protection arrangements, use of the Cash Collateral, and the DIP Facility contemplated hereby are fair and reasonable, reflect the Debtors' prudent exercise of business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration for the consent of the Prepetition First Lien Secured Parties. Notwithstanding anything to the contrary herein, the Prepetition First Lien Secured Parties' consent to the DIP Facility and to the priming of the Prepetition First Liens by the DIP Liens is expressly limited to the present DIP Facility and the DIP Liens securing the same and shall not be applicable to any other debtor-in-possession credit facility, even if it contains substantially the same economic terms as this DIP Facility.

J.      **Section 552**.   In light of the subordination of their Liens and superpriority administrative claims to (i) the Carve Out, in the case of the DIP Secured Parties, and (ii) the Carve Out and the DIP Liens, in the case of the Prepetition First Lien Secured Parties, each of the DIP Secured Parties and the Prepetition First Lien Secured Parties is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply.

K.      **Business Judgment and Good Faith Pursuant to Section 364(e)**.

(i)      The DIP Secured Parties have indicated a willingness to continue to provide postpetition secured financing via the DIP Facility to the Debtors in accordance with the DIP Loan Documents and this Final Order.

(ii)      Based on the DIP Motion and on the record presented to the Court at the Interim Hearing and Final Hearing, the terms and conditions of the DIP Facility (including the Roll Up) as set forth in the DIP Loan Documents and this Final Order, and the fees, expenses, and

other charges paid and to be paid thereunder or in connection therewith, are fair, reasonable, and the best available under the circumstances, and the Debtors' agreement to the terms and conditions of the DIP Loan Documents and to the payment of such fees reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties. Such terms and conditions are supported by reasonably equivalent value and fair consideration.

(iii) The DIP Secured Parties, the Prepetition First Lien Secured Parties, and the Debtors, with the assistance and counsel of their respective advisors, have acted in good faith and at arm's-length in, as applicable, negotiating, consenting to, and/or agreeing to, the DIP Facility (including the Roll Up), the Debtors' use of the DIP Collateral and the Prepetition First Lien Collateral (including Cash Collateral), the DIP Loan Documents, and the DIP Protections (including the Prepetition First Lien Adequate Protection (as defined below)). The DIP Obligations (including all advances that are made at any time to the Debtors under the DIP Loan Documents and including the Roll-Up DIP Loans) and the Debtors' use of the DIP Collateral and the Prepetition First Lien Collateral (including Cash Collateral) shall be deemed to have been extended and/or consented to by the DIP Secured Parties and the Prepetition First Lien Secured Parties for valid business purposes and uses and in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express and good faith reliance upon the protections offered by section 364(e) of the Bankruptcy Code, the Interim Order, and this Final Order, and, accordingly, the DIP Liens, the DIP Superpriority Claims (as defined below), the Prepetition First Lien Adequate Protection (as defined below), and the other DIP Protections shall be entitled to the full protection of section 364(e) of the Bankruptcy Code and this Final Order in the event this Final Order or any other order or any provision hereof or thereof is vacated, reversed, amended, or modified on appeal or otherwise.

L.     **Corporate Authority**.  Each Debtor has all requisite corporate power and authority to execute and enter into the DIP Loan Documents to which it is a party and to perform its obligations thereunder.

M.     **Relief Essential; Best Interest**.  For the reasons stated above, the Debtors have requested entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Bankruptcy Local Rules, and the Complex Case Procedures.  Absent granting the relief set forth in this Final Order, the Debtors' estates, their businesses and properties, and their ability to successfully reorganize or otherwise preserve the enterprise value of the Debtors' estates will be immediately and irreparably harmed.  Consummation of the DIP Facility on a final basis and authorization of the use of Cash Collateral in accordance with this Final Order and the DIP Loan Documents is therefore in the best interests of the Debtors' estates and consistent with their fiduciary duties.  Based on all of the foregoing, sufficient cause exists for entry of the Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the applicable Bankruptcy Local Rules.

**NOW, THEREFORE**, based on the DIP Motion and the record before this Court with respect to the DIP Motion, and with the consent of the Debtors, the Prepetition First Lien Agent at the direction of the requisite Prepetition First Lien Secured Parties (on behalf of all of the Prepetition First Lien Secured Parties), and the DIP Agent at the direction of the Requisite DIP Lenders (on behalf of all of the DIP Secured Parties), in each case, to the form and entry of this Final Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.     **Motion Granted**.  The DIP Motion is hereby granted in accordance with the terms and conditions set forth in this Final Order and the DIP Loan Documents.  Any objections,

reservations of rights, and/or other statements with respect to the DIP Motion that have not been withdrawn, waived, resolved, or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits with respect to the entry of this Final Order.

2.  **DIP Loan Documents and DIP Protections**.

(a)    Approval of DIP Loan Documents.    The Debtors are expressly and immediately authorized to continue to perform under the DIP Facility, to execute, deliver, and perform under the DIP Loan Documents and this Final Order, to incur the DIP Obligations (as defined below) (including to convert to DIP Obligations under the DIP Loan Documents each DIP Lender's ratable share of $157,500,000.00 of the outstanding principal amount of the Revolving Loans (as defined in the Prepetition First Lien Credit Agreement) with each DIP Lender's ratable share based on the ratio of such DIP Lender's share of the DIP Revolver Facility in accordance with, and subject to, the terms of this Final Order and the DIP Loan Documents), and to execute, deliver, and perform under all other instruments, certificates, agreements, and documents that may be required or necessary for the performance by the applicable Debtors under the DIP Loan Documents and the creation and perfection of the DIP Liens described in, and provided for, by this Final Order and the DIP Loan Documents.  To the extent such execution and delivery were authorized by the Interim Order and have already occurred, such execution and delivery are hereby ratified.  The Debtors are hereby authorized and directed to do and perform all acts and pay the principal, interest, fees, expenses, and other amounts described in the DIP Loan Documents as such become due pursuant to the DIP Loan Documents and this Final Order, including all closing fees, administrative fees, commitment fees, and reasonable attorneys', financial advisors', and accountants' fees, and disbursements chargeable and reimbursable under the DIP Loan Documents and this Final Order, which amounts shall not be subject to further approval of this Court and shall

be non-refundable and not subject to challenge in any respect; *provided* that the payment of the fees and expenses of the Lender Professionals (as defined below) shall be subject to the provisions of Paragraph 22(b).  Upon their execution and delivery, the DIP Loan Documents shall represent the legal, valid, binding, and non-avoidable obligations of the applicable Debtors enforceable against such Debtors in accordance with their terms.  Each officer of a Debtor acting singly is hereby authorized to execute and deliver each of the DIP Loan Documents, such execution and delivery to be conclusive evidence of such officer's respective authority to act in the name of and on behalf of the Debtors.  To the extent such execution and delivery were authorized by the Interim Order and have already occurred, such execution and delivery are hereby ratified.

(b)     DIP Obligations.   For purposes of this Final Order, the term "DIP Obligations" shall mean all amounts and other obligations and liabilities owing by the respective Debtors under the DIP Credit Agreement and other DIP Loan Documents (including all "Obligations" as defined in the DIP Credit Agreement, including, for avoidance of doubt, any liability in respect of the Lender Swap Contracts (as defined below), and the Roll-Up DIP Obligations (as defined below)), and shall include the principal of, interest on, and fees, costs, expenses, premiums, and other charges owing in respect of, such amounts (including any reasonable attorneys', accountants', financial advisors', and other fees, costs, and expenses that are chargeable or reimbursable under the DIP Loan Documents, the Interim Order and/or this Final Order), and any obligations in respect of indemnity claims, whether contingent or otherwise. Notwithstanding anything to the contrary herein, the relative rights and priorities of the Roll Up DIP Secured Parties and the other DIP Secured Parties in respect of the DIP Collateral shall be as provided in this Final Order and the other DIP Loan Documents.

(c)     <u>Authorization to Incur DIP Obligations and Use Cash Collateral</u>.  To enable the Debtors to continue to operate their business and preserve and maximize the value of their estates, the DIP Borrower is hereby authorized, subject to the terms of the DIP Loan Documents and this Final Order, (x) to use Cash Collateral and (y) to borrow and obtain letters of credit under the DIP Facility; *provided* that, for the avoidance of doubt, the DIP Borrower's authority to incur DIP Obligations and any proposed use of the proceeds of DIP Loans or use of Cash Collateral shall be consistent with the terms and conditions of this Final Order and the DIP Loan Documents, including the Approved Budget and the Budget Covenants, subject to any applicable Permitted Variance, as defined and contained in Paragraph 2(f) below.  Any amounts repaid under the DIP Revolver Facility may be reborrowed, subject to the terms of this Final Order and the DIP Loan Documents.  All DIP Obligations shall be unconditionally guaranteed, on a joint and several basis, by the DIP Guarantors, as further provided in the DIP Loan Documents.  The Prepetition First Lien Secured Parties are directed to turn over promptly to the DIP Agent for application to the DIP Obligations (other than the Roll-Up DIP Obligations) until Paid in Full (as defined below), and then to the Roll-Up DIP Obligations until Paid in Full, all Cash Collateral received or held by them that had not been applied to the Prepetition First Lien Obligations prior to the Petition Date; provided that, subject to the Carve Out, the Prepetition First Lien Secured Parties are granted adequate protection in the form of the Prepetition First Lien Adequate Protection.

(d)     <u>Roll Up</u>.  Each DIP Lender's ratable share of $157,500,000.00 of the outstanding principal amount of the Revolving Loans (as defined in the Prepetition First Lien Credit Agreement) (with each DIP Lender's ratable share based on the ratio of such DIP Lender's share of the DIP Revolver Facility) is immediately, automatically, and irrevocably deemed to have been converted into Roll-Up DIP Obligations (as defined below) and, except as otherwise provided

in this Final Order and the DIP Loan Documents, is entitled to all the priorities, privileges, rights, and other benefits afforded to the other DIP Obligations under this Final Order and the DIP Loan Documents; *provided* that to the extent any DIP Lender is a Participant (as defined in the Prepetition First Lien Credit Agreement) holding a participation interest in Revolving Loans, the forgoing conversion of Revolving Loans to Roll-Up DIP Obligations applies to the Revolving Loans in which such DIP Lender has a participation interest for the benefit of such DIP Lender. The conversion of the Roll-Up DIP Obligations is authorized as compensation for, in consideration for, as a necessary inducement for, and on account of the agreement of the Roll-Up DIP Lenders to fund amounts under the DIP Facility and not as payments under, adequate protection for, or otherwise on account of, any Prepetition First Lien Obligations. The Prepetition First Lien Lenders would not otherwise consent to the use of their Cash Collateral or the subordination of their liens to the DIP Liens, and the DIP Agent and the DIP Lenders would not be willing to provide the DIP Revolver Facility or extend credit to the Debtors thereunder without the inclusion of the Roll Up within the DIP Facility. The full amount of the Roll-Up DIP Obligations will be required to be repaid in cash on the Maturity Date (as defined in the DIP Credit Agreement), except that the Roll-Up DIP Agent and the holders of Roll-Up DIP Obligations representing at least a majority in amount of all Roll-Up DIP Obligations may elect (including under a chapter 11 plan of reorganization) to allow the Roll-Up DIP Obligations to be treated in any other manner acceptable to them. As used herein, the term "Roll-Up DIP Obligations" shall mean the Roll-Up DIP Loans and all interest accrued and accruing thereon and all other amounts owing by the respective Debtors in respect thereof.

(e)     Budget.    Attached to the Interim Order as Schedule 2 is a rolling thirteen-week cash flow budget (the "Initial Approved Budget") that reflects on a line-item basis

the Debtors' (i) weekly projected cash receipts (including from non-ordinary course assets sales) ("Receipts"), (ii) weekly projected disbursements (including ordinary course operating expenses, bankruptcy-related expenses under the Cases (including the estimated fees and expenses of the advisors to any parties to the Cases paid by the Debtors), capital expenditures, issuances of any letter of credit, including the fees relating thereto, and any other fees and expenses relating to the DIP Facility) ("Disbursements"), (iii) the sum of weekly unused availability under the DIP Facility plus unrestricted cash on hand (collectively, "Aggregate Liquidity"), and (iv) the weekly outstanding principal balance of the loans made and letters of credit issued under the DIP Facility (including the principal amount of the Roll Up from and after the entry of this Final Order) (the "DIP Balance").  Commencing on December 9, 2020 and continuing on the date of each four-week anniversary of such date occurring thereafter (*i.e.*, every four weeks) (each such date, a "Budget Date"), the Debtors shall prepare and deliver to the DIP Agent and Prepetition First Lien Agent (with a copy to counsel to the Ad Hoc Group of Noteholders and counsel to the Committee) an updated "rolling" thirteen-week budget (a "Proposed Supplemental Budget") and all other information reasonably requested by the DIP Agent, which, in each case, shall be in form, substance, and methodology satisfactory to the DIP Agent, and which, once approved in writing by the DIP Agent and Prepetition First Lien Agent in their respective sole discretion, shall supplement and replace the Initial Approved Budget or Supplemental Approved Budget (as defined below), as applicable, then in effect (each such updated budget that has been approved in writing by the DIP Agent and Prepetition First Lien Agent, a "Supplemental Approved Budget") without further notice, motion, or application to, order of, or hearing before, this Court; *provided* that the DIP Agent and the Prepetition First Lien Agent each shall have five Business Days (as defined in the DIP Credit Agreement) to approve each Proposed Supplemental Budget, and any

such party that fails to timely provide the Debtors written notice of any objection to such Proposed Supplemental Budget shall be deemed to have approved such Proposed Supplemental Budget; *provided further* that unless and until each of the DIP Agent and the Prepetition First Lien Agent has approved in writing (or is deemed to have approved as provided above) such Proposed Supplemental Budget or any other proposed modification to the Initial Approved Budget or any Supplemental Approved Budget, as applicable, then in effect, the Debtors shall still be subject to and be governed by the terms of the Initial Approved Budget or Supplemental Approved Budget, as applicable, then in effect in accordance with this Final Order, and the DIP Secured Parties and the Prepetition First Lien Secured Parties shall, as applicable, have no obligation to fund under any such Proposed Supplemental Budget or otherwise fund any amounts not otherwise provided for in the Initial Approved Budget or Supplemental Approved Budget, as applicable, or permit the use of Cash Collateral with respect thereto, as applicable.   The Debtors shall consult with the Committee and its advisors with respect to any Supplemental Approved Budget and any line item in any Supplemental Approved Budget.   The Initial Approved Budget, as modified by all Supplemental Approved Budgets, shall constitute the "Approved Budget."   Notwithstanding anything to the contrary in this Final Order, the professional fees, costs, and expenses of the DIP Agent's advisors and the Prepetition First Lien Agent's advisors, respectively, shall be due, payable, and paid in accordance with the terms of this Final Order notwithstanding any budgeted amounts for such fees, costs, and expenses set forth in the Approved Budget, and the Debtors shall not be deemed to have breached the terms of the Approved Budget or the Budget Covenants (as defined below) to the extent the actual amount of such fees, costs, and expenses exceed the applicable budgeted amounts as set forth in the Approved Budget.

(f)     Budget Reporting.

(i)     Beginning on November 26, 2020 and continuing on the date of each one-week anniversary of such date occurring thereafter (*i.e.,* every week) (each such date, an "Actuals Reporting Date"), the Debtors shall report (A) their actual Receipts for the week then ended, (B) their actual Disbursements for the week then ended, (C) the Aggregate Liquidity at the end of such week and (D) the DIP Balance at the end of such week (such report an "Actuals Report"). On or before 5:00 p.m. (prevailing Eastern Time) on each Actuals Reporting Date, the Debtors shall prepare and deliver to the DIP Agent and the Committee an Actuals Report, which shall be certified by a Financial Officer (as defined in the DIP Credit Agreement) of the Debtors, and be in form, substance, and methodology reasonably satisfactory to the DIP Agent.

(ii)     Beginning on December 3, 2020 and continuing on the date of each two-week anniversary of such date occurring thereafter (*i.e.*, every two weeks) (each such date, a "Variance Reporting Date"), the Debtors shall report on their disbursements of Cash Collateral and other DIP Collateral proceeds as compared to the Approved Budget, in each case, reporting as of the most recent Variance Reporting Date for the immediately preceding two-week or four week period (on an alternating basis), as applicable, then ended (each such period, a "Reporting Period," and each such report, a "Variance Report"). On or before 5:00 p.m. (prevailing Eastern Time) on each Variance Reporting Date, the Debtors shall prepare and deliver to the DIP Agent and the Committee a Variance Report, which shall be certified by a Financial Officer (as defined in the DIP Credit Agreement) of the Debtors, in form, substance, and methodology reasonably satisfactory to the DIP Agent, setting forth on a line-item basis (A) the actual Receipts and Disbursements, of the Debtors for the applicable Reporting Period, and (B) the variance expressed as a percentage (whether positive or negative) of the actual Receipts and Disbursements, from

those budgeted amounts for, or as applicable, as of the end of, the corresponding period reflected in the Approved Budget.

(iii)    Additionally on each Budget Date, the Debtors shall report on accounts payable aging, inclusive of Lease Operating Expenses & JIBs, Capex (both as defined below), specifying the proposed payment date for all invoices included, for the Reporting Period then ended (such report, an "AP Aging Report").

(g)    Budget Covenants.  As of any Variance Reporting Date, for the Reporting Period ending on such Variance Reporting Date, the Debtors shall not allow (x) the aggregate disbursements made by the Debtors with respect to the Test Line-Items (as defined herein) during such Testing Period to be greater than 115% of the aggregate disbursements for the Debtors with respect to the Test Line-Items set forth in the Approved Budget for such Testing Period, or (y) the actual cash disbursements made in respect of any Test Line-Item during such Reporting Period to be greater than 115% of the corresponding line-item set forth in the Approved Budget for such Reporting Period ((x) and (y) together the "Permitted Variance"); *provided* that the Debtors may carry forward to the subsequent Reporting Date any positive (i.e., cash-accretive) variances from any Variance Report delivered on a Variance Reporting Date that is not also a Budget Date; *provided further* that for any period during which a Proposed Supplemental Budget has not become the Approved Budget, the Debtors may carry forward positive (i.e., cash-accretive) variances solely in respect of Capex and Lease Operating Expenses & JIBs (as defined below) forecast to be paid (but not paid) in prior Reporting Periods as set forth in the applicable AP Aging Reports.  The following line-items listed on the Initial Approved Budget attached hereto as Schedule 2, which line-items shall remain incorporated in the Approved Budget at all times, shall be the "Test Line-Items" and each a "Test Line-Item" for purposes hereof: (a) GP&C Deducts, (b) Capex (c) Lease

26

Operating Expense & JIBs, and (d) G&A & Payroll.  Additional variances, if any, from any Approved Budget, and any proposed changes to any Approved Budget, shall be subject to the written consent of the DIP Agent and the Prepetition First Lien Agent in their respective sole discretion.  The foregoing budget-related covenants are collectively referred to herein as the "Budget Covenants."

(h)     <u>Interest, Fees, Costs, Indemnities, and Expenses</u>.  The DIP Obligations shall bear interest at the rates, and be due and payable (and paid), as set forth in, and in accordance with the terms and conditions of, this Final Order and the DIP Loan Documents, in each case without further notice, motion, or application to, order of, or hearing before, this Court.  The Debtors shall pay within two Business Days (as defined in the DIP Credit Agreement) all fees, costs, indemnities, expenses (including reasonable out-of-pocket legal and other professional fees and expenses of the DIP Agent), and other charges payable under the terms of the DIP Loan Documents.  All such fees, costs, indemnities, expenses, and disbursements, whether incurred, paid or required to be paid prepetition or postpetition and whether or not budgeted in the Approved Budget, are hereby affirmed, ratified, authorized, and payable (and any funds held by the DIP Agent and/or its professionals as of the Petition Date for payment of such fees, costs, indemnities, expenses, and disbursements may be applied for payment) as contemplated in this Final Order and the DIP Loan Documents, and, subject to the provisions of Paragraph 22(b) with respect to the fees and expenses of the Lender Professionals, shall be non-refundable and not subject to challenge in any respect and shall be payable without need to obtain further Court approval.

(i)     <u>Payment of Ad Hoc Noteholder Group Professional Fees</u>.  So long as the Restructuring Support Agreement (as defined below) has not been terminated, the Debtors are authorized to pay in cash the accrued and unpaid reasonable and documented fees (the "<u>Ad Hoc</u>

Noteholder Group Professional Fees") incurred by the advisors (the "Ad Hoc Noteholder Group Advisors") to the Ad Hoc Noteholder Group, including Paul, Weiss, Rifkind, Wharton & Garrison LLP, Porter Hedges LLP, and Houlihan Lokey, Inc., as counsel, co-counsel, and financial advisor, respectively, in an amount up to (a) for Houlihan Lokey, Inc., $150,000 per calendar month (beginning November, 2020), and (b) for all other Ad Hoc Noteholder Group Advisors, $400,000 per calendar month (beginning November, 2020), in each case whether accrued before, on, or after the Petition Date, plus any reasonable and documented out-of-pocket expenses incurred by such Ad Hoc Noteholder Group Advisors, regardless of whether such amounts are in the Budget, and as are otherwise owed and payable pursuant to that certain Restructuring Support Agreement, dated as of November 13, 2020 (as amended, restated, modified or supplemented from time to time, the "Restructuring Support Agreement"), by and among (i) the Company Parties, (ii) the Consenting Noteholders, and (iii) the Consenting RBL Lenders (each, as defined therein), all subject to the procedures set forth in Paragraph 22(b) hereof with regard to the Lender Professionals. Any fees and expenses incurred and payable pursuant to this paragraph shall first be payable from and applied against any retainer or deposit (as set forth in the Restructuring Support Agreement) held by the applicable Ad Hoc Noteholder Group Advisor. The Ad Hoc Noteholder Group Advisors shall be entitled to (y) invoice any amounts incurred in any calendar month beginning in December 2020 in excess of $150,000 or $400,000 (as applicable) in one or more subsequent months, and (z) apply the difference between $150,000 and $400,000 (as applicable) and the Ad Hoc Noteholder Group Professional Fees actually invoiced by the Ad Hoc Noteholder Group Advisors in any calendar month beginning in December 2020, if any, to the applicable Ad Hoc Noteholder Group Professional Fees, if any, in excess of $150,000 and $400,000, respectively, in one or more subsequent invoices. Notwithstanding anything to the

contrary contained herein, (i) any payments made pursuant to this paragraph shall be without prejudice, and with a full reservation of rights, for any party to seek that such payments should be recharacterized or reallocated as distributions or payments of principal, interest or otherwise to the Ad Hoc Noteholder Group; *provided*, for the avoidance of doubt, that such reservation of rights does not include any claim or argument that such payments should be recharacterized or reallocated as distributions or payments of any kind with respect to DIP Obligations or Prepetition First Lien Obligations, including, without limitation First Lien Adequate Protection Liens or First Lien Adequate Protection Superpriority Claims, (ii) nothing herein shall limit the ability of any Ad Hoc Noteholder Group Advisor to be paid all fees and expenses incurred in connection with these cases in full in cash, or to maintain professional fee retainers, pursuant to any other order of, or document approved by, this Court, including the Backstop Approval Order, a chapter 11 plan, or a confirmation order or any party's ability to contest the payment of such fees and expenses, and (iii) nothing herein shall constitute a permanent or absolute cap on, reduction of, or other impairment of the Ad Hoc Noteholder Group Advisors' entitlement to, the Ad Hoc Group Professional Fees (including, for the avoidance of doubt, the Deferred Fee, Deferred Amendment Fee (each as defined in the below-referenced engagement letter), or other transaction fee payable to Houlihan Lokey, Inc. pursuant to its engagement letter with the Debtors).

(j)     Use of DIP Facility and Proceeds of DIP Collateral.  The DIP Borrower shall apply the proceeds of all DIP Collateral solely in accordance with this Final Order, the DIP Loan Documents, and the Approved Budget (subject to any applicable Permitted Variance). Without limiting the foregoing, the Debtors shall not be permitted to make any payments (from the DIP Collateral, the proceeds of DIP Loans, Cash Collateral, or otherwise) on account of any prepetition debt or obligation prior to the effective date of a confirmed chapter 11 plan or plans

with respect to any of the Debtors, except:  (i) with respect to the Prepetition First Lien Obligations, as set forth in this Final Order; (ii) as provided in the orders entered by the Court in the Cases (other than the Interim Order and this Final Order) pursuant to motions and applications filed by the Debtors within ten days after the Petition Date (the "First Day Orders"), which First Day Orders shall be reasonably acceptable to the DIP Agent; *provided* that the Cash Management Order (as defined below) shall be in form and substance acceptable to the DIP Agent in its sole discretion; (iii) as expressly provided in other motions, orders, and requests for relief, each in form and substance acceptable to the DIP Agent and the Prepetition First Lien Agent prior to such motion, order, or request for such relief being filed; or (iv) as otherwise expressly provided in the DIP Credit Agreement, without giving effect to any amendment or waiver thereof to which the Prepetition First Lien Agent has not consented in writing.

(k)     Conditions Precedent.  The DIP Secured Parties and Prepetition First Lien Secured Parties each have no obligation to make further extensions of credit under the DIP Facility or permit use of any DIP Collateral or Prepetition First Lien Collateral or any proceeds thereof, including Cash Collateral, as applicable, unless and until all conditions precedent to such extensions of credit and/or use of DIP Collateral, Prepetition First Lien Collateral, or proceeds thereof under the DIP Loan Documents and this Final Order have been satisfied in full or waived in writing by the DIP Secured Parties and the Prepetition First Lien Agent in accordance with the DIP Loan Documents or Prepetition First Lien Credit Agreement, as applicable, and this Final Order.

(l)     DIP Liens.  Subject to the Carve Out, as security for the DIP Obligations, effective as of the Petition Date, the following security interests and Liens, which were immediately and without any further action by any Person valid, binding, permanent, perfected,

continuing, enforceable, and non-avoidable upon the entry of the Interim Order, were granted by

the Debtors to the DIP Agent, for itself and the other DIP Secured Parties and are hereby ratified

and confirmed (all such security interests and Liens granted to the DIP Agent for the benefit of all

the DIP Secured Parties pursuant to the Interim Order, this Final Order, and the DIP Loan

Documents, the "DIP Liens"), on all property of the Debtors, now existing or hereinafter acquired,

including all cash and cash equivalents (whether maintained with the DIP Agent or otherwise),

and any investment in such cash or cash equivalents, money, inventory, goods, accounts receivable

(including those owed to the Debtors generated by intercompany transactions), other rights to

payment, intercompany loans and other investments, securities and other investment property,

contracts, contract rights, properties, plants, equipment, machinery, general intangibles, payment

intangibles, accounts, deposit accounts, documents, instruments, chattel paper, documents of title,

letters of credit, letter of credit rights, supporting obligations, leases and other interests in

leaseholds, real property, fixtures, patents, copyrights, trademarks, trade names, other intellectual

property, intellectual property licenses, permits, franchise rights, capital stock and other equity

interests of domestic and foreign subsidiaries and in other entities, tax and other refunds, insurance

proceeds, claims (including commercial tort claims), causes of action (including the proceeds of

Avoidance Actions), and products, offspring, profits, and proceeds relating thereto, rights under

section 549 of the Bankruptcy Code (whether received by judgment, settlement, or otherwise), all

other Collateral (as defined in the DIP Loan Documents), and all other "property of the estate" (as

defined in section 541 of the Bankruptcy Code) of any kind or nature, real or personal, tangible,

intangible, or mixed, now existing or hereafter acquired or created, and all rents, products,

substitutions, accessions, profits, replacements, and cash and non-cash proceeds of all of the

foregoing, in each case wherever located; *provided* that the Avoidance Actions themselves shall

not be DIP Collateral; *provided*, *further*, that the DIP Collateral shall not include any lease or other real property right of any Debtor solely to the extent the granting of any Liens thereto or thereon would constitute: (a) an abandonment, invalidation, or unenforceability of any material right of ownership or title of any Debtor therein; or (b) a material breach or termination pursuant to the terms of, or a material default under, any such lease or document governing any other real property right pursuant to any provision thereof, unless in the case of each of the foregoing clauses (a) and (b), the applicable provision is rendered ineffective by applicable nonbankruptcy law or the Bankruptcy Code (all of the foregoing collateral collectively, the "DIP Collateral"):

> (A)     pursuant to section 364(c)(2) of the Bankruptcy Code, a perfected, binding, continuing, enforceable, and non-avoidable first priority Lien on and security interest in all DIP Collateral that is not otherwise subject to a valid, perfected, and enforceable security interest or Lien in existence as of the Petition Date or a valid Lien perfected (but not granted) after the Petition Date (to the extent that such perfection in respect of a prepetition claim is expressly permitted under the Bankruptcy Code), including the proceeds of Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state or municipal law (collectively, the "Avoidance Actions"), whether received by judgment, settlement, or otherwise;
>
> (B)     pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected, binding, continuing, enforceable, and non-avoidable Lien on and security interest in all DIP Collateral that is subject solely to the Prepetition Prior Liens, which DIP Lien shall be junior only to such Prepetition Prior Liens and the Carve Out; and
>
> (C)     subject to the Carve Out, pursuant to section 364(d)(1) of the Bankruptcy Code, a perfected, binding, continuing, enforceable, and non-avoidable first priority, senior priming Lien on and security interest in all other DIP Collateral (including Cash Collateral), which DIP Lien (x) shall be senior to the First Lien Adequate Protection Liens (as defined below) and senior and priming to (A) the Prepetition First Liens and (B) any Liens that are junior to the Prepetition First Liens or the First Lien Adequate Protection Liens (the Liens referenced in clauses (A) and (B), collectively, the "Primed Liens") and shall be junior only to the Prepetition Prior Liens and the Carve Out.

(m)     <u>DIP Lien Priority</u>.  Notwithstanding anything to the contrary contained in this Final Order or the DIP Loan Documents, for the avoidance of doubt, the DIP Liens granted to the DIP Agent for the benefit of the DIP Secured Parties shall in each and every case be first priority senior Liens that (i) are subject only to the Prepetition Prior Liens, and to the extent provided in this Final Order and the DIP Loan Documents, shall also be subject to the Carve Out, and (ii) except as provided in the immediately preceding sub-clause (i), are senior to all prepetition and postpetition Liens or other interests of any kind of any other person or entity (including the Primed Liens and the First Lien Adequate Protection Liens), whether created voluntarily or involuntarily (including by order of a court).

(n)     <u>Enforceable Obligations</u>.  The DIP Loan Documents shall constitute and evidence the valid and binding DIP Obligations of the Debtors, which DIP Obligations shall be enforceable against the Debtors, their estates, and any successors thereto (including any trustee or other estate representative in any Successor Case (as defined below)), and their creditors and other parties-in-interest, in accordance with their terms.  No obligation, payment, transfer, or grant of security under the DIP Credit Agreement, the other DIP Loan Documents, or this Final Order shall be stayed, restrained, voidable, avoidable, disallowable, or recoverable under the Bankruptcy Code or under any applicable law (including under sections 502(d), 544, 547, 548, or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, surcharge, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

(o)    <u>Superpriority Administrative Claim Status</u>.  In addition to the DIP Liens granted in the Interim Order and herein (including as ratified herein), effective immediately upon entry of the Interim Order, all of the DIP Obligations (including, for the avoidance of doubt, any liability in respect of Lender Swap Contracts (as defined below)) constituted allowed superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code, and have priority, subject only to the payment of the Carve Out in accordance with this Final Order, over all administrative expense claims, adequate protection, and other diminution claims (including the First Lien Adequate Protection Superpriority Claims (as defined below) priority and other unsecured claims, and all other claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses or other claims of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546, 726, 1113, and 1114 or any other provision of the Bankruptcy Code or otherwise), whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy, or attachment (the "<u>DIP Superpriority Claims</u>").  The DIP Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including the proceeds of Avoidance Actions (but, for the avoidance of doubt, not the Avoidance Actions themselves).  Other than as expressly provided in the DIP Credit Agreement and/or this Final Order with respect to the Carve Out, no costs or expenses of administration, including professional fees allowed and payable under sections 328, 330, or 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority

claims are, or will be, senior to, prior to, or on a parity with the DIP Superpriority Claims or the DIP Obligations, or with any other claims of the DIP Secured Parties arising under the DIP Loan Documents and/or this Final Order.  The DIP Superpriority Claims granted to the Roll-Up DIP Lenders shall be immediately junior in priority and subject to the DIP Superpriority Claims of the other DIP Secured Parties.

(p)     <u>Priority of DIP Liens and DIP Superpriority Claims</u>.  The DIP Liens and the DIP Superpriority Claims:  (i) shall not be subject to sections 506(c), 510, 549, 550, or 551 of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code; (ii) shall not be subordinate to, or *pari passu* with, (A) any Lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise or (B) any Liens or claims of any Debtor or any direct or indirect subsidiary thereof against any Debtor or any of such Debtor's property; (iii) shall be valid and enforceable against any trustee or any other estate representative elected or appointed in the Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (each, a "<u>Successor Case</u>"), and/or upon the dismissal of any of the Cases; and (iv) notwithstanding anything to the contrary in any First Day Order of this Court in any of the Cases, shall be senior to any administrative expenses arising under any such First Day Order.

3.     **Adequate Protection for Prepetition First Lien Secured Parties**. In consideration for the use of the Prepetition First Lien Collateral (including Cash Collateral) and the priming of the Prepetition First Liens, the Prepetition First Lien Agent, for the benefit of the Prepetition First Lien Secured Parties, shall receive the following adequate protection (collectively, the "<u>Prepetition First Lien Adequate Protection</u>"):

(a)     First Lien Adequate Protection Liens.  Subject to the Carve Out, to the extent there is a diminution in value of the interests of the Prepetition First Lien Secured Parties in the Prepetition First Lien Collateral (including Cash Collateral) from and after the Petition Date, whether or not resulting from the use, sale, or lease by the Debtors of the applicable Prepetition First Lien Collateral (including Cash Collateral), the granting of the DIP Superpriority Claims, the granting of the DIP Liens, the subordination of the Prepetition First Liens thereto and to the Carve Out, or the imposition or enforcement of the automatic stay of section 362(a) of the Bankruptcy Code ("Diminution in Prepetition First Lien Collateral Value"), the Prepetition First Lien Agent, for the benefit of all the Prepetition First Lien Secured Parties, was granted by the Interim Order and is hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, replacement Liens upon all of the DIP Collateral, including the proceeds of Avoidance Actions (such adequate protection replacement Liens, the "First Lien Adequate Protection Liens"), which First Lien Adequate Protection Liens on such DIP Collateral shall be subject and subordinate only to the DIP Liens, the Prepetition Prior Liens and the Carve Out; *provided*, *however*, that the definition of "diminution in value" as used in this paragraph 3(a) shall be subject to, and not exceed that which is protected pursuant to, applicable law and the Bankruptcy Code, including, but not limited to, section 361 of the Bankruptcy Code. All parties' rights are reserved as to whether a diminution in value has occurred and the extent of such diminution.

(b)     First Lien Adequate Protection Superpriority Claims.  Subject and subordinate to the Carve Out, to the extent of Diminution in Prepetition First Lien Collateral Value, the Prepetition First Lien Secured Parties were further granted by the Interim Order and are hereby granted allowed superpriority administrative claims (such adequate protection superpriority

claims, the "<u>First Lien Adequate Protection Superpriority Claims</u>"), pursuant to section 507(b) of the Bankruptcy Code, with priority over all administrative expense claims and priority and other unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, 1114, or any other provision of the Bankruptcy Code or otherwise, junior only to the DIP Superpriority Claims and the Carve Out to the extent provided herein and in the DIP Loan Documents, and payable from and having recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (including all proceeds of Avoidance Actions); *provided* that the Prepetition First Lien Secured Parties shall not receive or retain any payments, property, or other amounts in respect of the First Lien Adequate Protection Superpriority Claims unless and until all DIP Obligations have been Paid in Full.  Subject to the relative priorities set forth above, the First Lien Adequate Protection Superpriority Claims against each Debtor shall be allowed and enforceable against each Debtor and its estate on a joint and several basis.  For purposes of this Final Order, the terms "<u>Paid in Full</u>," "<u>Repaid in Full</u>," "<u>Repay in Full</u>," "<u>Pay in Full</u>," and "<u>Payment in Full</u>" shall mean, with respect to any referenced DIP Obligations and/or Prepetition First Lien Obligations, (i) the indefeasible payment in full in cash of such obligations, (ii) the termination or cash collateralization, in accordance with the DIP Loan Documents or Prepetition First Lien Loan Documents, as applicable, of all undrawn letters of credit outstanding thereunder, and (iii) the termination of all credit commitments under the DIP Loan Documents and/or Prepetition First Lien Loan Documents, as applicable; *provided* that the First Lien Adequate Protection Superpriority Claims granted to the Prepetition First Lien Secured Parties may be impaired pursuant to any chapter 11 plan of reorganization in the Cases with the vote of the

applicable class of the holders of such claims that satisfies the requirements of section 1126 of the Bankruptcy Code, in which case, Payment in Full (or any of the other variants of this phrase referenced above) would occur upon consummation of such plan.  Notwithstanding the foregoing or anything to the contrary in this Final Order or the Prepetition First Lien Loan Documents, the Prepetition First Lien Secured Parties shall use commercially reasonable efforts to satisfy the Prepetition First Lien Obligations first from the liens and proceeds of Collateral other than proceeds of Avoidance Actions and commercial tort claims, and second from the proceeds of Avoidance Actions and commercial tort claims.

(c)     <u>Priority of First Lien Adequate Protection Liens and First Lien Adequate Protection Superpriority Claims</u>.  The First Lien Adequate Protection Liens and the First Lien Adequate Protection Superpriority Claim (i) shall not be subject to sections 506(c), 510, 549, 550, or 551 of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (ii) shall not be subordinate to, or *pari passu* with, (A) any Lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise or (B) any Liens or claims of any Debtor or any direct or indirect subsidiary thereof against any Debtor or any of such Debtor's property, (iii) shall be valid, binding, perfected, and enforceable against any trustee or any other estate representative elected or appointed in the Cases or any Successor Cases, and/or upon the dismissal of any of the Cases, and (iv) notwithstanding anything to the contrary in any First Day Order of this Court in any of the Cases (other than the Interim Order), shall be senior to any administrative expenses arising under any such First Day Order.

(d)     <u>Interest and Professional Fees of Prepetition First Lien Agent</u>.  As further adequate protection, and without limiting any rights of the Prepetition First Lien Agent and the

other Prepetition First Lien Secured Parties under section 506(b) of the Bankruptcy Code which are hereby preserved, and in consideration, and as a requirement, for obtaining the consent of the Prepetition First Lien Secured Parties to the entry of this Final Order and the Debtors' consensual use of Cash Collateral as provided herein, the Debtors shall (i) pay or reimburse in cash the Prepetition First Lien Agent for any and all reasonable fees, costs, expenses, and charges to the extent, and at the times, payable under the Prepetition First Lien Loan Documents, including, without limitation, any reasonable unpaid fees, costs and expenses accrued prior to the Petition Date, (ii) on the last day of each calendar month commencing after the Closing Date, pay to the Prepetition First Lien Agent for prompt distribution to the applicable Prepetition First Lien Secured Parties any and all of the interest accruing on the Prepetition First Lien Obligations under the Prepetition First Lien Credit Agreement at the non-default rate set forth therein, and (iii) pay currently all reasonable out-of-pocket fees, costs, and expenses of the Prepetition First Lien Agent (including, without limitation, the fees, costs, and expenses of counsel and financial advisors for the Prepetition First Lien Agent), in the case of each of sub-clauses (i), (ii), and (iii) above, all whether accrued prepetition or postpetition and whether or not budgeted in the Approved Budget, and without further notice (except as provided in Paragraph 22(b) below with respect to postpetition professional fees, costs, and expenses), motion, or application to, order of, or hearing before, this Court.  Notwithstanding anything to the contrary contained herein, any payments made as First Lien Adequate Protection pursuant to this Final Order shall be without prejudice, and with a full reservation of rights, for any party to seek that such payments should be recharacterized or reallocated pursuant to section 506(b) of the Bankruptcy Code as payments of principal, interest or otherwise.

(e)      The Debtors shall deliver to the Prepetition First Lien Agent all information, reports, documents, and other material that the Debtors provide to the DIP Secured Parties pursuant to the DIP Loan Documents.

(f)      Notwithstanding the Payment in Full of the DIP Obligations and the termination of the DIP Loan Documents, the covenants set forth in the DIP Loan Documents and any order of this Court relating thereto shall continue in full force and effect for the benefit of the Prepetition First Lien Agent and the Prepetition First Lien Secured Parties, and may be enforced by the Prepetition First Lien Agent.  Unless otherwise expressly set forth herein or in the DIP Loan Documents, any consent or approval rights or similar rights granted or referenced in the Interim Order, this Final Order, or in the DIP Loan Documents in favor of any or all of the DIP Agent, the other DIP Secured Parties, the Prepetition First Lien Agent, and the other Prepetition First Lien Secured Parties may be exercised (or not exercised) in the sole discretion of such party.

(g)      Consent to Priming and Adequate Protection.  The Prepetition First Lien Agent at the direction of Majority Lenders (as defined in the Prepetition First Lien Credit Agreement), on behalf of the Prepetition First Lien Secured Parties, consents to the Prepetition First Lien Adequate Protection and the priming provided for herein; *provided* that such consent of the Prepetition First Lien Agent to the priming of the Prepetition First Liens and the use of Cash Collateral is expressly conditioned upon the entry of this Final Order and such consent shall not be deemed to extend to any other Cash Collateral usage or other replacement financing or debtor-in-possession financing other than the DIP Facility provided under the DIP Loan Documents; *provided*, *further*, that such consent shall be of no force and effect in the event this Final Order is not entered or is entered and subsequently reversed, modified, stayed, or amended (unless such

40

reversal, modification, stay, or amendment is acceptable to the Prepetition First Lien Agent) or the DIP Loan Documents and DIP Facility as set forth herein are not approved.

(h)     Right to Seek Additional Adequate Protection. Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, this Court finds that the adequate protection provided herein is reasonable to protect the interests of the Prepetition First Lien Secured Parties. However, the Prepetition First Lien Agent, on behalf of the Prepetition First Lien Secured Parties may request Court approval for additional or alternative adequate protection, without prejudice to any objection of the Debtors or any other party in interest to the grant of any additional or alternative adequate protection; *provided* that any such additional or alternative adequate protection shall at all times be subordinate and junior to the Carve Out and claims and Liens of the DIP Secured Parties granted under the Interim Order, this Final Order and the DIP Loan Documents; *provided*, *further*, that nothing in this paragraph shall authorize the Prepetition First Lien Agent or Prepetition First Lien Secured Parties to deny the Debtors access to Cash Collateral or DIP Loans in accordance with the Approved Budget, subject to any Permitted Variance, pursuant to the terms of this Final Order during the pendency of such request for additional or alternative adequate protection. The consent of the Prepetition First Lien Secured Parties to the priming of the Prepetition First Liens by the DIP Liens and the Debtors' use of Cash Collateral on the terms set forth herein does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition First Lien Secured Parties that their respective interests in the Prepetition First Lien Collateral are adequately protected pursuant to this Final Order or otherwise.

4.     **Automatic Postpetition Lien Perfection.** The Interim Order was and remains, and this Final Order shall be, sufficient and conclusive evidence of the validity, enforceability,

perfection, and priority of the DIP Liens and the First Lien Adequate Protection Liens without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, security agreement, pledge agreement, control agreement, or other instrument or document that may otherwise be required under the law of any jurisdiction, (b) obtaining "control" (as defined in any applicable Uniform Commercial Code or other law) over any DIP Collateral (and the DIP Agent and, after Payment in Full of the DIP Facility, the Prepetition First Lien Agent shall be deemed, without any further action, to have control over all the Debtors' deposit accounts, securities accounts, and commodities accounts within the meaning of such Uniform Commercial Code and other law), or (c) taking any other action to validate or perfect the DIP Liens and the First Lien Adequate Protection Liens or to entitle the DIP Liens and the First Lien Adequate Protection Liens to the priorities granted in the Interim Order and herein.  Notwithstanding the foregoing, each of the DIP Agent and the Prepetition First Lien Agent (in the latter case, solely with respect to the First Lien Adequate Protection Liens) may, each in their sole discretion, enter into and file, as applicable, financing statements, mortgages, security agreements, notices of Liens, and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices, and other agreements or documents shall be deemed to have been entered into, filed, or recorded as of the Petition Date.  The applicable Debtors shall execute and deliver to the DIP Agent and/or the Prepetition First Lien Agent, as applicable, all such financing statements, mortgages, notices, and other documents as such parties may reasonably request to evidence and confirm the contemplated validity, perfection, and priority of the DIP Liens and the First Lien Adequate Protection Liens, as applicable, granted pursuant hereto.  Without limiting the foregoing, each of the DIP Agent and the Prepetition First Lien Agent may, in its discretion, file a

photocopy of this Final Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized and hereby is directed to file or record such copy of this Final Order. Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the payment of any fees or other monetary obligations to any governmental entity or non-governmental entity in order for the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other DIP Collateral is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the Liens on such leasehold interests or other applicable DIP Collateral or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Secured Parties in accordance with the terms of the DIP Loan Documents, the Interim Order, and this Final Order or in favor of the Prepetition First Lien Secured Parties in accordance with this Final Order. To the extent that the Prepetition First Lien Agent is the secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, financing statement, or account control agreements, listed as loss payee or additional insured under any of the Debtors' insurance policies, or is the secured party under any of the Prepetition First Lien Loan Documents, the DIP Agent shall also be deemed to be the secured party under such account control agreements, loss payee or additional insured under the Debtors' insurance policies, and the secured party under each such Prepetition First Lien Loan Document, shall have all rights and powers attendant to that position (including rights of enforcement), and shall act in that capacity and distribute any proceeds recovered or received first, for the benefit of the DIP Secured Parties in accordance with the DIP

Loan Documents and second, subsequent to Payment in Full of all DIP Obligations, for the benefit

of the Prepetition First Lien Secured Parties.  The Prepetition First Lien Agent shall serve as agent

for the DIP Agent for purposes of perfecting the DIP Agent's Liens on all DIP Collateral that,

without giving effect to the Bankruptcy Code and this Final Order, is of a type such that perfection

of a Lien therein may be accomplished only by possession or control by a secured party.

5. **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**.

The Debtors' DIP Stipulations are binding upon the Debtors, their estates, and each other party in

interest, including the Committee, in all circumstances effective as of the date of entry of the

Interim Order.  The Debtors' First Lien Stipulations are binding upon the Debtors and their estates

in all circumstances effective as of the date of entry of the Interim Order.  The Debtors' First Lien

Stipulations shall be binding upon each party in interest (other than the Debtors), including the

Committee and any chapter 11 trustee (or if the Cases are converted to cases under chapter 7 prior

to the expiration of the Challenge Period (as defined below), the chapter 7 trustee in such Successor

Case), except to the extent and only to the extent such party in interest with standing (subject in

all respects to any agreement or applicable law that may limit or affect such party's right or ability

to do so) *first*, commences, by the earlier of (x)(i) with respect to a party other than the Committee,

forty (40) calendar days after the Petition Date and (ii) with respect to the Committee, ninety (90)

calendar days after the formation of the Committee, and (y) the date of confirmation of a chapter

11 plan (such time period established by the earlier of clauses (x) and (y), as the same may be

extended in accordance with this Paragraph 5, shall be referred to as the "Challenge Period," and

the date that is the next calendar day after the termination of the Challenge Period in the event that

either (i) no Challenge (as defined below) is properly raised during the Challenge Period or (ii)

with respect only to those parties who properly file a Challenge, such Challenge is fully and finally

adjudicated, shall be referred to as the "Challenge Period Termination Date"), (A) a contested matter or adversary proceeding challenging or otherwise objecting to the admissions, stipulations, findings, or releases included in the Debtors' First Lien Stipulations, or (B) a contested matter or adversary proceeding against any or all of the Prepetition First Lien Secured Parties in connection with or related to the Prepetition First Lien Obligations, or the actions or inactions of any of the Prepetition First Lien Secured Parties arising out of or related to the Prepetition First Lien Obligations or the Prepetition First Lien Loan Documents, including any claim against any or all of the Prepetition First Lien Secured Parties in the nature of a "lender liability" cause of action, setoff, counterclaim, or defense to the Prepetition First Lien Obligations (including those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code or by way of suit against any of the Prepetition First Lien Secured Parties) (clauses (A) and (B) collectively, the "Challenges" and, each individually, a "Challenge"), and *second*, obtains a final, non-appealable order in favor of such party in interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding, or other action (any such Challenge timely brought for which such a final and non-appealable order is so obtained, a "Successful Challenge").  If a chapter 7 trustee or a chapter 11 trustee is appointed or elected during the Challenge Period, then the Challenge Period Termination Date with respect to such trustee only, shall be the later of (i) the last day of the Challenge Period and (ii) the date that is twenty days after the date on which such trustee is appointed or elected.  Except as otherwise expressly provided herein, from and after the Challenge Period Termination Date and for all purposes in these Cases and any Successor Cases (and after the dismissal of these Cases or any Successor Cases), (i) all payments made to or for the benefit of the Prepetition First Lien Secured Parties pursuant to, or otherwise authorized by, the Interim Order, this Final Order, or otherwise (whether made prior to, on, or after the Petition Date)

shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense, disallowance, recovery, or avoidance, (ii) any and all such Challenges by any party in interest shall be deemed to be forever released, waived, and barred, (iii) all of the Prepetition First Lien Obligations shall be deemed to be fully allowed claims within the meaning of section 506 of the Bankruptcy Code (which claims shall have been deemed satisfied to the extent the Prepetition First Lien Obligations are converted pursuant to the Roll Up), and (iv) the Debtors' First Lien Stipulations, including the release provisions therein, shall be binding on all parties in interest in these Cases or any Successor Cases, including the Committee or any chapter 11 or chapter 7 trustee. Notwithstanding the foregoing, to the extent any Challenge is timely asserted, the Debtors' First Lien Stipulations and the other provisions in clauses (i) through (iv) in the immediately preceding sentence shall nonetheless remain binding and preclusive on the Committee and on any other party in interest from and after the Challenge Period Termination Date, except to the extent that such Debtors' First Lien Stipulations or the other provisions in clauses (i) through (iv) of the immediately preceding sentence were challenged in such Challenge and such Challenge becomes a Successful Challenge. The Challenge Period may be extended only with the prior written consent of the Prepetition First Lien Agent in its sole discretion.

Notwithstanding any provision to the contrary herein, nothing in this Final Order shall be construed to grant standing on or authority to any party in interest, including the Committee, to pursue or bring any cause of action, including any Challenge, on behalf of the Debtors or their estates. The failure of any party in interest, other than the Committee (as set forth below), to obtain an order of this Court prior to the Challenge Period Termination Date granting standing to bring any Challenge on behalf of the Debtors' estates shall not be a defense to failing to commence a Challenge prior to the Challenge Period Termination Date as required under this Paragraph 5 or to

require or permit an extension of the Challenge Period Termination Date.  For the avoidance of doubt, as to the Debtors, upon entry of this Final Order, all Challenges, and any right to assert or assign or consent to standing to assert any Challenge, are hereby irrevocably waived and relinquished as of the Petition Date, and the Debtors' First Lien Stipulations shall be binding in all respects on the Debtors irrespective of the filing of any Challenge.

With respect to the Committee only, the filing by the Committee of a standing motion or other application (collectively, a "Standing Motion") for authority and/or standing to commence a Challenge accompanied with a copy of the proposed complaint (the "Proposed Complaint"), which details the alleged Challenge sought to be pursued, shall automatically extend the Challenge Period for the Committee only (provided such Standing Motion and Proposed Complaint are filed on or before expiration of the Challenge Period for the Committee), solely with respect to the Challenges subject to the Standing Motion and Proposed Complaint.  The timely filing by the Committee of a Standing Motion and accompanying Proposed Complaint before the expiration of the Challenge Period for the Committee shall automatically extend the Challenge Period solely for the matters raised in the Proposed Complaint until the date that is the third business day after the Court issues a ruling on such Standing Motion.  The Committee agrees that any hearing on the Standing Motion will be held within fourteen (14) days of filing of the Standing Motion, subject to availability of the Court, unless otherwise agreed in writing by the Debtors and the DIP Agent.

Notwithstanding anything to the contrary contained herein, the rights of any party to challenge the validity, extent, and priority of the Prepetition First Lien Facility, the liens securing the Prepetition First Lien Facility, and any roll-up thereof (including the Roll-Up and Roll-Up DIP Loans) are fully reserved and preserved subject to and in accordance with paragraph 5 of this Final Order.  For the avoidance of doubt, as to the Debtors, upon entry of this Final Order, all Challenges,

and any right to assert or assign or consent to standing to assert any Challenge, are hereby irrevocably waived and relinquished as of the Petition Date, and the Debtors' First Lien Stipulations shall be binding in all respects on the Debtors irrespective of the filing of any Challenge.

6.     **Carve Out**.

(a)     <u>Carve Out</u>.  As used in this Final Order, the "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $75,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "<u>Allowed Professional Fees</u>") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "<u>Debtor Professionals</u>") and the Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "<u>Committee Professionals</u>" and, together with the Debtor Professionals, the "<u>Professional Persons</u>"), and the reimbursement of out-of-pocket expenses allowed by the Court and incurred by the members of the Committee in the performance of their duties (but excluding fees and expenses of third party professionals employed by such members), incurred at any time before or on the first business day following delivery by the DIP Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $5 million incurred after the first business day following delivery by the DIP Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order,

48

procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, counsel to the Committee, and counsel to the Ad Hoc Noteholder Group, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the DIP Obligations under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

      (b)    Carve Out Reserves.

      (i)    On the day on which a Carve Out Trigger Notice is given by the DIP Agent to the Debtors with copies to counsel to the Committee and the Ad Hoc Noteholder Group, respectively (the "Trigger Notice Date"), the Carve Out Trigger Notice shall (A) be deemed a draw request and notice of borrowing by the Debtors for DIP Loans under the DIP Credit Agreement (on a pro rata basis based on the then outstanding Commitments (as defined in the DIP Credit Agreement)), in an amount equal to the then unpaid amounts of the Allowed Professional Fees (any such amounts actually advanced shall constitute DIP Loans) and (B) also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees.  The Debtors shall deposit and hold such amounts in a segregated account at the DIP Agent in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims.

      (ii)    On the Trigger Notice Date, the Carve Out Trigger Notice shall also (A) be deemed a request by the Debtors for DIP Loans under the DIP Credit Agreement (on a pro rata basis based on the then outstanding Commitments (as defined in the DIP Credit Agreement)),

in an amount equal to the Post-Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute DIP Loans) and (B) constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap.  The Debtors shall deposit and hold such amounts in a segregated account at the DIP Agent in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims.

(iii)    On the first business day after the DIP Agent gives such notice to such DIP Lenders, notwithstanding anything in the DIP Credit Agreement to the contrary, including with respect to the existence of a Default or Event of Default (each as defined in the DIP Credit Agreement), the failure of the Debtors to satisfy any or all of the conditions precedent for Loans under the DIP Facility, any termination of Commitments following an Event of Default, or the occurrence of the Maturity Date (as defined in the DIP Credit Agreement), each DIP Lender with an outstanding Commitment (on a pro rata basis based on the then outstanding Commitments) shall make available to the DIP Agent such DIP Lender's pro rata share with respect to such borrowing in accordance with the DIP Facility.

(iv)    All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agent for the benefit of the DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all Commitments have

50

been terminated, in which case any such excess shall be paid to the Prepetition First Lien Secured Parties in accordance with their rights and priorities as of the Petition Date.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agent for the benefit of the DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all Commitments have been terminated, in which case any such excess shall be paid to the Prepetition First Lien Secured Parties in accordance with their rights and priorities as of the Petition Date.

(v)     Notwithstanding anything to the contrary in the DIP Loan Documents, or this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 6(b), then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 6(b), prior to making any payments to the DIP Agent, the Prepetition First Lien Secured Parties, or the Debtors' other creditors, as applicable.  Notwithstanding anything to the contrary in the DIP Loan Documents or this Final Order, following delivery of a Carve Out Trigger Notice, neither the DIP Agent nor the Prepetition First Lien Agent shall sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the DIP Agent for application in accordance with the DIP Loan Documents.  Further, notwithstanding anything to the contrary in this Final Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not

51

constitute DIP Loans or increase or reduce the DIP Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Initial Approved Budget, Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order, the DIP Loan Documents, or any Prepetition First Lien Loan Documents, the Carve Out shall be senior to all liens and claims securing the DIP Facility, the First Lien Adequate Protection Liens, and the First Lien Adequate Protection Superpriority Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition First Lien Obligations.

(c)    <u>Payment of Allowed Professional Fees Prior to the Trigger Notice Date</u>.  Any payment or reimbursement made prior to the occurrence of the Trigger Notice Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(d)    <u>No Direct Obligation To Pay Allowed Professional Fees; No Waiver of Right to Object to Fees</u>.  None of the DIP Secured Parties or the Prepetition First Lien Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Cases or any successor cases under any chapter of the Bankruptcy Code.  Nothing in this Final Order or otherwise shall be construed to obligate any DIP Secured Party or any Prepetition First Lien Secured Party in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors,

the Committee, any other official or unofficial committee in these Cases or any Successor Cases, or of any person or entity, or shall affect the right of any DIP Secured Party or any Prepetition First Lien Secured Party to object to the allowance and payment of any such fees and expenses.

(e)    Payment of Carve Out On or After the Trigger Notice Date.  Any payment or reimbursement made on or after the occurrence of the Trigger Notice Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Final Order, the DIP Loan Documents, the Bankruptcy Code, and applicable law.

7.    **Waiver of 506(c) Claims**.  As a further condition of (i) the DIP Facility and any obligation of the DIP Secured Parties to make credit extensions pursuant to the DIP Loan Documents (and the consent of the DIP Secured Parties and the Prepetition First Lien Secured Parties to the payment of the Carve Out to the extent provided herein) and (ii) the Debtors' use of Cash Collateral pursuant to this Final Order, (a) no costs or expenses of administration of the Cases or any Successor Cases shall be charged against or recovered from or against any or all of the DIP Secured Parties and/or the Prepetition First Lien Secured Parties, the Prepetition First Lien Collateral, the DIP Collateral, or the Cash Collateral, in each case pursuant to section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Agent and the Prepetition First Lien Agent, and (b) no such consent shall be implied from any other action, inaction, or acquiescence of any or all of the DIP Secured Parties and the Prepetition First Lien Secured Parties.

8.    **After-Acquired Property**.  Except as otherwise expressly provided in this Final Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors on

or after the Petition Date is not, and shall not be, subject to any Lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date, except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable Lien as of the Petition Date (or a valid, enforceable, and unavoidable Lien that is perfected subsequent to the Petition Date solely to the extent permitted by section 546(b) of the Bankruptcy Code) that is not subject to subordination or avoidance under the Bankruptcy Code or other provisions or principles of applicable law.

9. **Protection of DIP Secured Parties' and Prepetition First Lien Secured Parties' Rights.** Unless the requisite DIP Secured Parties under the DIP Loan Documents and the requisite Prepetition First Lien Secured Parties under the Prepetition First Lien Loan Documents shall have provided their prior written consent (as applicable below) or all DIP Obligations and Prepetition First Lien Obligations have been Paid in Full, there shall not be entered in any of these Cases or any Successor Cases any order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following:  (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral or Prepetition First Lien Collateral and/or that is entitled to administrative priority status, other than the Carve Out, in each case that is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the First Lien Adequate Protection Liens, the First Lien Adequate Protection Superpriority Claims, and/or the other DIP Protections; (ii) the use of Cash Collateral for any purpose other than to Pay in Full the DIP Obligations and the allowed First Lien Adequate Protection Superpriority Claims or as otherwise permitted in the DIP Loan Documents and this Final Order, (iii) the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any

creditor of any Debtor or any creditor's taking any setoff against any of its prepetition indebtedness based upon any such return pursuant to section 553 of the Bankruptcy Code or otherwise, or (iv) any modification of any of the DIP Secured Parties' or the Prepetition First Lien Secured Parties' rights under this Final Order, the DIP Loan Documents, or the Prepetition First Lien Loan Documents with respect to any DIP Obligations.

(b)     The Debtors (and/or their legal and financial advisors in the case of clauses (ii) through (iv) below) will, whether or not the DIP Obligations have been Paid in Full, (i) maintain books, records, and accounts to the extent and as required by the DIP Loan Documents, (ii) reasonably cooperate with, consult with, and provide to the DIP Secured Parties, the Prepetition First Lien Secured Parties, the Ad Hoc Noteholder Group, and the Committee all such information and documents that any or all of the Debtors are obligated (including upon reasonable request by any of the DIP Secured Parties, the Prepetition First Lien Secured Parties, the Ad Hoc Noteholder Group, or the Committee) to provide under the DIP Loan Documents, the Restructuring Support Agreement or the provisions of this Final Order, (iii) upon reasonable advance notice, permit consultants, advisors, and other representatives (including third party representatives) of each of the DIP Agent, the Prepetition First Lien Agent, the Ad Hoc Noteholder Group, and the Committee reasonable access to any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants, and other professional advisors (other than legal counsel) as and to the extent required by the DIP Loan Documents, the Prepetition First Lien Loan Documents, and/or the Restructuring Support Agreement, (iv) upon reasonable advance notice and a reasonable

request, permit the DIP Agent, the Prepetition First Lien Agent, the Ad Hoc Noteholder Group, the Committee and their respective consultants, advisors, and other representatives to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations, and assets, and (v) upon reasonable advance notice, permit the DIP Agent, the Prepetition First Lien Agent, the Ad Hoc Noteholder Group, and the Committee to conduct, at their discretion and at the Debtors' cost and expense, reasonable field audits, collateral examinations and inventory appraisals at reasonable times in respect of any or all of the DIP Collateral and the Prepetition First Lien Collateral.  Notwithstanding anything to the contrary contained herein, the Debtors do not waive any right to attorney-client, work product, or similar privilege, and the Debtors shall not be required to provide the DIP Agent, the Prepetition First Lien Agent, the Ad Hoc Noteholder Group, the Committee or their respective counsel and financial advisors with any information subject to attorney-client privilege or consisting of attorney work product.  For avoidance of doubt, the Prepetition First Lien Agent shall have the same access and cooperation rights as the DIP Agent for purposes of this Paragraph 9(b).

10. **Proceeds of Subsequent Financing**.  Without limiting the provisions and protections of the Carve Out and Paragraph 9 above, if at any time prior to the Payment in Full of all the DIP Obligations and the Prepetition First Lien Obligations (including subsequent to the confirmation of any chapter 11 plan or plans with respect to any of the Debtors), the Debtors' estates, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed shall obtain credit or incur debt pursuant to sections 364(b), 364(c), 364(d), or any other provision of the Bankruptcy Code in violation of this Final Order or the DIP Loan Documents, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over to the DIP Agent for application to the DIP Obligations until Paid in

56

Full and then to the Prepetition First Lien Agent for application to allowed First Lien Adequate Protection Superpriority Claims until Paid in Full.

11.    **Cash Collection**.  All collections and proceeds of any DIP Collateral or Prepetition First Lien Collateral or services provided by any Debtor and all Cash Collateral that shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in the same lock-box and/or deposit accounts into which the collections and proceeds of the Prepetition First Lien Collateral (the "Prepetition Collateral Accounts") were deposited under the Prepetition First Lien Loan Documents (or in such other accounts as are designated by the DIP Agent from time to time) (collectively, the "Cash Collection Accounts"), which accounts shall be subject to the sole dominion and control of the DIP Agent and, solely to the extent such funds are deposited into the Prepetition Collateral Accounts, the Prepetition First Lien Agent (and the funds in such accounts may be used by the Debtors to the extent provided in this Final Order and the DIP Loan Documents).  Subject to the Carve Out, upon the direction of the DIP Agent or, following Payment in Full of the DIP Obligations, the Prepetition First Lien Agent, at any time after the occurrence of a Termination Event and subject to the provisions of Paragraph 6 and Paragraph 14, all proceeds in the Cash Collection Accounts shall be remitted to the DIP Agent for application to the DIP Obligations until Payment in Full, and then to the Prepetition First Lien Agent for application to the Prepetition First Lien Obligations until Payment in Full, and the DIP Agent and the Prepetition First Lien Agent shall be entitled to take all action that is necessary or appropriate to effectuate the foregoing.  Unless otherwise agreed to in writing (email shall suffice) by the DIP Agent and the Prepetition First Lien Agent, the Debtors shall maintain no accounts except those identified in any order (the "Cash Management Order") approving the relief requested in the *Debtors' Emergency*

*Motion for Entry of Interim and Final Orders (A) Authorizing the Debtors to (I) Continue to Operate their Cash Management System and Maintain Existing Bank Accounts, (II) Maintain Existing Business Forms and Books and Records, and (III) Continue to Perform Intercompany Transactions, and (B) Granting Related Relief* (the "Cash Management Motion").  The Debtors and the financial institutions where the Debtors' Cash Collection Accounts are maintained (including those accounts identified in any Cash Management Order) are authorized and directed to remit, without offset or deduction, funds in such Cash Collection Accounts upon receipt of any direction to that effect from the DIP Agent or, following Payment in Full of the DIP Obligations, the Prepetition First Lien Agent.  The Debtors are authorized to incur obligations and liabilities for treasury, depositary, or cash management services, including overnight overdraft services, controlled disbursement, automated clearinghouse transactions, return items, overdrafts, and interstate depository network services provided on a postpetition basis by any financial institution at which any Cash Collection Account is maintained; *provided*, *however*, that (i) any Lien securing any such obligations shall be junior to the DIP Lien on the funds in the Cash Collection Accounts at such financial institution, and (ii) except to the extent otherwise required by this Court, nothing herein shall require any DIP Secured Party or Prepetition First Lien Secured Party to incur any overdrafts or provide any such services or functions to the Debtors.

        (a)     Cash Management.  Notwithstanding anything to the contrary in the Cash Management Motion or any Cash Management Order, (i) the Debtors may only agree to and implement changes to the Cash Management System (as defined in the Cash Management Motion) and procedures related thereto with the written consent (email shall suffice) of the DIP Agent; provided that the Debtors shall be permitted to amend any signature card to denominate a Bank Account (as defined in the Cash Management Motion) to be a debtor-in-possession account at an

approved depository; (ii) any postpetition payment from a Debtor to another Debtor under any postpetition Intercompany Transaction (as defined in the Cash Management Motion) accorded administrative expense priority status under any Cash Management Order shall be (A) subject to the terms of the DIP Loan Documents and this Final Order (including all Approved Budgets, subject to a Permitted Variance, as applicable) and (B) subject and junior to the Carve Out and the claims, including the DIP Superpriority Claims and the First Lien Adequate Protection Superpriority Claims, granted in connection with the DIP Facility under the Interim Order or this Final Order, and (iii) those certain deposit agreements existing between the Debtors and the Cash Management Banks (as defined in the Cash Management Motion) shall continue to govern the postpetition cash management relationship between the Debtors and the Cash Management Banks and, subject to applicable bankruptcy or other law, all of the provisions of such agreements, including, the termination, fee provisions, rights, benefits, offset rights and remedies afforded under such agreements shall remain in full force and effect absent further order of the Court or, with respect to any such agreement with any Cash Management Bank (as defined in the Cash Management Motion) (including, for the avoidance of doubt, any rights of a Cash Management Bank to use funds from the Bank Accounts (as defined in the Cash Management Motion) to remedy any overdraft of another Bank Account to the extent permitted under the applicable deposit agreement), unless the Debtors, with the consent of the DIP Agent and such Cash Management Bank agree otherwise, and any other legal rights and remedies afforded to the Cash Management Banks under applicable law shall be preserved, subject to applicable bankruptcy law.

12. **Disposition of DIP Collateral; Credit Bid**.

(a) Unless the DIP Obligations and the Prepetition First Lien Obligations are Paid in Full upon the closing of a sale or other disposition of the DIP Collateral or Prepetition First

Lien Collateral, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral or any Prepetition First Lien Collateral (or enter into any binding agreement to do so) (other than the sale of crude oil, natural gas, or other hydrocarbons in the ordinary course of business) without the prior written consent of the DIP Agent and, solely with respect to the Prepetition First Lien Collateral, the Prepetition First Lien Agent (and no such consent shall be implied from any other action, inaction, or acquiescence by any DIP Secured Party or Prepetition First Lien Secured Party or any order of this Court), except as permitted in the DIP Loan Documents and/or the Prepetition First Lien Loan Documents, as applicable, and this Final Order.  Except to the extent otherwise expressly provided in the DIP Loan Documents, all proceeds from the sale, transfer, lease, encumbrance, or other disposition of any DIP Collateral (other than the sale of crude oil, natural gas, or other hydrocarbons in the ordinary course of business) shall be remitted to the DIP Agent for application to the DIP Obligations and then to the Prepetition First Lien Obligations, in each case, in accordance with the terms of this Final Order and the DIP Loan Documents or the Prepetition First Lien Loan Documents, as the case may be.  In addition, the Debtors are authorized and directed to enter into such blocked account agreements (with cash dominion, if the DIP Agent so elects) with the DIP Agent and such financial institutions as the DIP Agent may require, and, if it so elects, the DIP Agent shall be entitled to enjoy the benefit of all control agreements to which the Prepetition First Lien Agent is a party without the need to enter into new blocked account agreements.

(b)     Subject to Paragraph 5 of this Final Order and the Bankruptcy Code, the Prepetition First Lien Agent (or one or more of its designees, affiliates, or assignees) shall have the right to credit bid up to the full amount of any Prepetition First Lien Obligations in any sale of the Prepetition First Lien Collateral (or any DIP Collateral subject to any First Lien Adequate

Protection Liens) under or pursuant to (A) section 363 of the Bankruptcy Code, (B) any plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code to the extent any sale contemplated thereunder does not result in Payment in Full of all of the DIP Obligations on the effective date of such plan, or (C) section 725 of the Bankruptcy Code. The Debtors, on behalf of themselves and their estates, stipulate and agree that any sale of all or part of the Prepetition First Lien Collateral (or any DIP Collateral subject to any First Lien Adequate Protection Liens) that does not include an right to credit bid up to the full amount of the Prepetition First Lien Obligations would mean that the Prepetition First Lien Agent and the other Prepetition First Lien Secured Parties will not receive the indubitable equivalent of their claims and interests. Subject to limitations of the Bankruptcy Code, the DIP Agent (or one or more of its designees, affiliates, or assignees) shall have the right to credit bid any or all of the DIP Obligations under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) any plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) section 725 of the Bankruptcy Code; provided that the Debtors waive and relinquish any rights to argue that "cause" exists to limit or modify such rights to credit bid. If the DIP Agent or the Prepetition First Lien Agent or their respective designees, affiliates, or assignees make a credit bid in connection with any auction or other sale process relating to the sale or other disposition of any DIP Collateral or Prepetition First Lien Collateral, then for purposes of such auction or sale process or any applicable order of this Court, the DIP Agent and/or Prepetition First Lien Agent shall be automatically deemed to be a qualified bidder and its bid shall be automatically deemed to constitute a qualified bid, regardless of whether the qualified bidder or qualified bid requirements are satisfied.

13.     **Termination Events**.  The following shall constitute a termination event under this Final Order and the DIP Loan Documents unless waived in writing by each of the DIP Agent and the Prepetition First Lien Agent (each, a "Termination Event"):

(a)     The occurrence of an "Event of Default" under the DIP Credit Agreement as set forth therein (a "DIP Default Termination Event").

(b)     Any other breach, default, or other violation by any of the Debtors of the terms and provisions of this Final Order or the hedging order [Docket No. 113], as applicable.

(c)     The Debtors' failure to timely and strictly comply with any of the obligations and deadlines set forth in Schedule 3 attached to the Interim Order.

**Rights and Remedies Upon Termination Event**.

(a)     Immediately upon the occurrence and during the continuation of a Termination Event, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion, or notice to, hearing before, or order of the Court, but subject to the terms of this Final Order, the DIP Agent at the direction of the DIP Lenders (on behalf of all of the DIP Secured Parties) may declare any or all of the following (i) all outstanding DIP Obligations owing under the respective DIP Loan Documents to be immediately due and payable, (ii) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains, (iii) termination of the DIP Facility and the DIP Loan Documents as to any future liability or obligation of the DIP Agent and the DIP Secured Parties, without affecting any of the DIP Liens or the DIP Obligations, (iv) that the application of the Carve Out has occurred through the delivery of the Carve-Out Trigger Notice (as defined above) to the Debtors and the compliance with the requirements of the Carve Out; and (v) declare a termination, reduction, or restriction on the ability of the Debtors to use any Cash Collateral.  Any declaration by the DIP

Agent pursuant to clause 14(a)(v) shall be subject to the Debtors' continued use of Cash Collateral pursuant to the Approved Budget for five (5) Business Days after the Termination Declaration Date to pay payroll and other expenses that the Debtors reasonably believe are critical to keep the business of the Debtors operating in accordance with the Approved Budget.  Any declaration under this clause 14(a) shall be made in writing (including via electronic mail) to the respective lead counsel to the Debtors, the Committee, the Ad Hoc Noteholder Group, and the U.S. Trustee (collectively, the "Termination Notice Parties"), and shall be referred to herein as a "Termination Declaration" and the date that is the earliest to occur of any such Termination Declaration being referred to herein as the "Termination Declaration Date").  Solely during the five (5) Business Day period after a Termination Declaration Date, the Debtors and the Committee shall be entitled to seek an emergency hearing before this Court (subject to Court availability) for the sole purpose of contesting whether a Termination Event has occurred, and section 105 of the Bankruptcy Code may not be invoked by the Debtors, the Committee, or any other party in interest in an effort to restrict or preclude any DIP Secured Party from exercising any rights or remedies set forth in this Final Order or the DIP Loan Documents.  Notwithstanding anything to the contrary contained herein, neither the Debtors nor the Committee shall be limited in arguments that may be raised at an emergency hearing following a Termination Declaration by a DIP Secured Party.

(b)     If a Termination Declaration is delivered as provided in paragraph 14(a), the Debtors hereby consent to a hearing being held before this Court on an expedited basis upon the DIP Agent filing a motion (the "Lift Stay Motion") to cause the automatic stay to be lifted to enable the DIP Agent to exercise rights and remedies against the DIP Collateral in accordance with this Final Order, the DIP Loan Documents, the Prepetition First Lien Loan Documents, or applicable law.  The Debtors hereby waive their right to and shall not be entitled to seek relief,

including under section 105 of the Bankruptcy Code or otherwise, to the extent that such relief would in any way impair or restrict the express rights and remedies granted to the DIP Agent and the DIP Secured Parties under this paragraph 14.

(c)     In the event that the DIP Obligations have been Paid in Full, immediately upon the occurrence and during the continuation of a Termination Event, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion, or notice to, hearing before, or order of the Court, but subject to the terms of this Final Order, the Prepetition First Lien Agent at the direction of the Prepetition First Lien Lenders (on behalf of the Prepetition First Lien Secured Parties) may declare a termination, reduction, or restriction on the ability of the Debtors to use any Cash Collateral, subject to the Debtors' continued use of Cash Collateral pursuant to the Approved Budget for five (5) Business Days after the First Lien Termination Declaration Date to pay payroll and other expenses that the Debtors reasonably believe are critical to keep the business of the Debtors operating in accordance with the Approved Budget.  Any such declaration made under this clause 14(c) shall be made in writing (including via electronic mail) to the Termination Notice Parties and shall be referred to herein as a "First Lien Termination Declaration" and the date that is the earliest to occur of any such First Lien Termination Declaration being referred to herein as the "First Lien Termination Declaration Date".  Solely during the five (5) Business Day period after a First Lien Termination Declaration Date, the Debtors and the Committee shall be entitled to seek an emergency hearing before this Court (subject to Court availability) for the sole purpose of contesting whether a Termination Event has occurred, and section 105 of the Bankruptcy Code may not be invoked by the Debtors, the Committee, or any other party in interest in an effort to restrict or preclude any Prepetition First Lien Secured Party from exercising any rights or remedies set forth in this Final Order or the

Prepetition First Lien Loan Documents.  Notwithstanding anything to the contrary contained herein, neither the Debtors nor the Committee shall be limited in arguments that may be raised at an emergency hearing following a Termination Declaration by a Prepetition First Lien Secured Party.

(d)      If a Termination Declaration is delivered as provided in paragraph 14(c), the Debtors hereby consent to a hearing being held before this Court on an expedited basis upon the Prepetition First Lien Agent filing a Lift Stay Motion to cause the automatic stay to be lifted to enable the Prepetition First Lien Agent to exercise rights and remedies against the Prepetition First Lien Collateral or DIP Collateral in accordance with this Final Order and the Prepetition First Lien Loan Documents, or applicable law.  The Debtors hereby waive their right to and shall not be entitled to seek relief, including under section 105 of the Bankruptcy Code or otherwise, to the extent that such relief would in any way impair or restrict the express rights and remedies granted to the Prepetition First Lien Agent and Prepetition First Lien Secured Parties under this paragraph 14.

(e)      Upon the effectiveness of any relief from the automatic stay with respect to the DIP Facility pursuant to Paragraph 14(b) hereof, the Prepetition First Lien Agent shall have relief from the automatic stay to the same extent as the DIP Agent, and without further notice, hearing, motion, order, or other action of any kind, to foreclose on, or otherwise enforce and realize on its Prepetition First Priority Liens and the First Lien Adequate Protection Liens on, all or any portion of the DIP Collateral or Prepetition First Lien Collateral (including by collecting accounts receivable and applying the proceeds thereof to the Prepetition First Lien Obligations, and by occupying the Debtors' premises to sell or otherwise dispose of the DIP Collateral or Prepetition First Lien Collateral) or otherwise exercise remedies against the DIP Collateral or Prepetition First

Lien Collateral permitted by this Final Order, the Prepetition First Lien Loan Documents, and/or applicable non-bankruptcy law; *provided*, *however*, that any such foreclosure or other enforcement by the Prepetition First Lien Agent of any Prepetition First Priority Liens or any First Lien Adequate Protection Liens or any other such exercise of remedies by the Prepetition First Lien Agent against the DIP Collateral or Prepetition First Lien Collateral shall not interfere with or otherwise be inconsistent with any foreclosure or other enforcement by the DIP Agent of any DIP Liens or other DIP Protections or any other exercise of remedies by the DIP Agent, and any proceeds received by the Prepetition First Lien Agent in connection with such foreclosure, enforcement, or other exercise of remedies shall be turned over to the DIP Agent for application to the DIP Obligations until Paid in Full.

(f)      Subject to the provisions of Paragraph 5 hereof, and subject to the Carve Out, all proceeds realized in connection with the exercise of the rights and remedies of the DIP Secured Parties or the Prepetition First Lien Secured Parties shall be turned over *first* to the DIP Agent for application to the DIP Obligations under, and in accordance with the provisions of, the DIP Loan Documents and this Final Order until Payment in Full of all of the DIP Obligations and *then* to the Prepetition First Lien Agent for application to the Prepetition First Lien Obligations under, and in accordance with the provisions of, the Prepetition First Lien Loan Documents and this Final Order until Payment in full of the Prepetition First Lien Obligations.

(g)      Notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Agent or the other DIP Secured Parties contained in this Final Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents and paragraph 14 of this Final Order, upon five (5) Business Days' written notice to the Debtors and any landlord, lienholder, licensor, or other

third party owner of any leased or licensed premises or intellectual property that a Termination Event has occurred and is continuing, the DIP Agent (i) may, unless otherwise provided in any separate agreement by and between the applicable landlord or licensor and the DIP Agent (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of the Debtors for the purpose of exercising any remedy with respect to any DIP Collateral located thereon and (ii) shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable lease or license and to use any and all trademarks, trade names, copyrights, licenses, patents, or any other similar assets of the Debtors that are owned by or subject to a Lien of any third party and that are used by Debtors in their businesses, in the case of either subsection (i) or (ii) of this Paragraph 14(g) without interference from lienholders, lessors, or licensors thereunder, subject to such lienholders', lessors', or licensors' rights under applicable law; *provided*, *however*, that the DIP Agent, on behalf of the DIP Secured Parties, shall pay only rent and make lease payments and pay additional rent, lease obligations, fees, royalties, or other monetary obligations of the Debtors that first arise after the written notice referenced above from the DIP Agent and that accrue during the period of such occupancy or use by such DIP Agent calculated on a *per diem* basis if and to the extent that such expenses were included in an Approved Budget.  Nothing herein shall require the Debtors, the DIP Agent, or the other DIP Secured Parties to assume any lease, license, or other contract under Bankruptcy Code section 365(a) as a precondition to the rights afforded to the DIP Agent and the other DIP Secured Parties in this Paragraph 14(g).

(h)     Subject to the Payment in Full of the DIP Obligations, notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the Prepetition First Lien Agent or the other Prepetition First Lien Secured Parties contained in this

Final Order or the Prepetition First Lien Loan Documents, or otherwise available at law or in equity, the Prepetition First Lien Agent shall succeed to, and be entitled to, all of the rights, remedies, benefits, and protections accorded to the DIP Agent pursuant to paragraph 14, as if all references therein to the "DIP Agent" and the "DIP Secured Parties" are references to the "Prepetition First Lien Agent" and the "Prepetition First Lien Secured Parties."

(i)       The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of this Final Order and the DIP Loan Documents as necessary to (i) permit the Debtors to grant the First Lien Adequate Protection Liens and the DIP Liens and to incur all liabilities and obligations to the DIP Secured Parties and the Prepetition First Lien Secured Parties under the DIP Loan Documents, the DIP Facility, and this Final Order, (ii) authorize the DIP Secured Parties and the Prepetition First Lien Secured Parties to retain and apply payments made in accordance with the DIP Loan Documents, the Prepetition First Lien Loan Documents, and/or this Final Order, (iii) to permit each of the DIP Agent, the other DIP Secured Parties, the Prepetition First Lien Agent, and the other Prepetition First Lien Secured Parties to perform any act authorized under this Final Order and the DIP Loan Documents, (iv) otherwise to the extent necessary to implement and effectuate the provisions of this Final Order and the DIP Loan Documents, and (v) permit non-Debtor parties to the Restructuring Support Agreement to take all actions contemplated therein and to exercise rights thereunder.  For avoidance of doubt, it shall not be a violation of the automatic stay for any L/C Issuer (as defined in the DIP Credit Agreement) to issue a notice of non-renewal of any letters of credit in accordance with the terms thereof.

15.       **Restriction on Use of Proceeds**.  Notwithstanding anything herein to the contrary, no loans and/or proceeds from the DIP Facility, DIP Collateral, Cash Collateral (including any

retainer held by any professionals for the below-referenced parties), Prepetition First Lien Collateral, or any portion of the Carve Out may be used by (a) any Debtor, Committee, or trustee or other estate representative appointed in the Cases or any Successor Cases, or any other person, party, or entity (including any of the Debtor Professionals, any Committee Professionals, or the members of the Committee ("Committee Members")) to investigate or prosecute any Challenge (including any litigation or other action) in connection with the value of the DIP Collateral or the Prepetition First Lien Collateral (or to pay any professional fees and disbursements incurred in connection therewith) at any time; or (b) any Debtor, the Committee, or any trustee or other estate representative appointed in the Cases or any Successor Cases, or any other person, party, or entity (including any of the Debtor Professionals, any Committee Professionals, or any Committee Members) to (or to pay any professional fees and disbursements incurred in connection therewith): (i) request authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code, or otherwise, other than from the DIP Secured Parties, or to seek any modification to this Final Order not approved by the DIP Agent (after having obtained the approval of the requisite DIP Secured Parties under the DIP Credit Agreement) and, to the extent such modification would affect the rights of any of the Prepetition First Lien Secured Parties, the Prepetition First Lien Agent (after obtaining the approval of the requisite Prepetition First Lien Secured Parties under the Prepetition First Lien Credit Agreement); (ii) investigate (except as set forth below), assert, join, commence, support, or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the interests of, in any capacity, any or all of the DIP Secured Parties, the Prepetition First Lien Secured Parties, their respective affiliates, assigns, or successors and the respective officers,

directors, employees, agents, attorneys, representatives, and other advisors of the foregoing, with respect to any transaction, occurrence, omission, action, or other matter (including formal or informal discovery proceedings in anticipation thereof), including (A) any Challenges and any Avoidance Actions or other actions arising under chapter 5 of the Bankruptcy Code; (B) any action with respect to the validity, enforceability, priority, and extent of the DIP Obligations and/or the Prepetition First Lien Obligations, or the validity, extent, and priority of the DIP Liens, the Prepetition First Liens, or the First Lien Adequate Protection Liens; (C) any action seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the DIP Liens, the other DIP Protections, the Prepetition First Liens, the First Lien Adequate Protection Liens, or the other Prepetition First Lien Adequate Protection; (D) any "lender liability" cause of action; (E) except to contest in good faith the occurrence or continuance of any Termination Event as permitted in Paragraph 14, any action seeking, or having the effect of, preventing, hindering, or otherwise delaying any or all of the DIP Secured Parties', and, after the Payment in Full of the DIP Obligations, the Prepetition First Lien Secured Parties', assertion, enforcement, or realization on the Cash Collateral, the DIP Collateral, or the Prepetition First Lien Collateral in accordance with the DIP Loan Documents or the Prepetition First Lien Loan Documents, as applicable, or this Final Order; and/or (F) any action seeking to modify any of the rights, remedies, priorities, privileges, protections, and benefits granted to any or all of the DIP Secured Parties and the Prepetition First Lien Secured Parties hereunder or under the DIP Loan Documents or the Prepetition First Lien Loan Documents, as applicable, or any payments made thereunder or in respect thereof; *provided*, *however*, up to $300,000 in the aggregate of the Carve Out, any DIP Collateral, any Prepetition First Lien Collateral, any Cash Collateral, and proceeds of the DIP Facility may be used by the Committee to investigate (but not to prosecute or challenge) so long as such investigation occurs

within the Challenge Period (i) the claims and/or Liens of the Prepetition First Lien Agent and the other Prepetition First Lien Secured Parties under the Prepetition First Lien Loan Documents (but not the claims and/or Liens of the DIP Agent and the other DIP Secured Parties); (ii) potential causes of action against the Prepetition First Lien Secured Party Releasees in connection with claims to be released under this Final Order; (iii) pay any fees or similar amounts to any person (other than the Prepetition First Lien Secured Parties) who has proposed or may propose to purchase interests in any of the Debtors without the prior written consent of the DIP Agent and the Prepetition First Lien Agent; or (iv) use or seek to use Cash Collateral or sell or otherwise dispose of DIP Collateral or Prepetition First Lien Collateral, unless otherwise permitted hereby, without the prior written consent of the DIP Agent and the Prepetition First Lien Agent, as applicable. Notwithstanding the foregoing, nothing herein shall be deemed to: (a) limit the ability of the Committee's professionals to be paid from unencumbered assets on account of allowed administrative expenses arising from services rendered in the investigation or prosecution of claims against the Prepetition First Lien Secured Parties; (b) preclude the Court from awarding fees and expenses to the Committee professionals pursuant to section 330 of the Bankruptcy Code for such services rendered; nor (c) relieve the Debtors or any plan proponent(s) from paying all allowed administrative expenses in connection with the confirmation of any plan.

16. **<u>Proofs of Claim</u>**.

(a)     The Prepetition First Lien Secured Parties will not be required to file proofs of claim in any of the Cases or Successor Cases for any claim allowed herein.  The Debtors' First Lien Stipulations shall be deemed to constitute a timely filed proof of claim for the Prepetition First Lien Secured Parties in respect of all Prepetition First Lien Obligations.  In addition, the Prepetition First Lien Secured Parties and the DIP Secured Parties will not be required to file any

request for allowance and/or payment of any administrative expenses, and this Final Order shall be deemed to constitute a timely filed request for allowance and/or payment of any Prepetition First Lien Obligations constituting administrative expenses or any DIP Obligations, as applicable. Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of the Cases or Successor Cases to the contrary, each of the Prepetition First Lien Agent, for the benefit of itself and the other Prepetition First Lien Secured Parties, and the DIP Agent, for the benefit of itself and the other DIP Secured Parties, is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, in its discretion) in each of the Cases or Successor Cases (i) in the case of Prepetition First Lien Agent, a proof of claim and/or aggregate proofs of claim in respect of any Prepetition First Lien Obligations, and (ii) in the case of each of the Prepetition First Lien Agent and the DIP Agent, a request or aggregate requests for allowance and/or payment of any portion of the Prepetition First Lien Obligations constituting administrative expenses or any DIP Obligations, as applicable.

(b)     Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of the Cases or Successor Cases to the contrary, the Trustee (as defined in the Restructuring Support Agreement) for the benefit of itself and the Prepetition Senior Notes Parties, is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, in its discretion) in each of the Cases or Successor Cases a proof of claim and/or aggregate proofs of claim in respect of any Indenture or the Obligations (as defined in the Indentures) arising thereunder.

17.     **<u>Preservation of Rights Granted Under the Final Order</u>**.

(a)     <u>No Non-Consensual Modification or Extension of Final Order</u>.   The Debtors irrevocably waive any right to seek any amendment, modification, or extension of this

Final Order (including through any <u>chapter</u> 11 plan of reorganization) without the prior written consent of the DIP Agent and the Prepetition First Lien Agent, and no such consent shall be implied by any other action, inaction, or acquiescence of the DIP Secured Parties or any of the Prepetition First Lien Secured Parties; *provided* that any amendment, modification, or extension of this Final Order shall require prior written notice to counsel to the Ad Hoc Noteholder Group and counsel to the Committee.  In the event any or all of the provisions of this Final Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court, such modification, amendment, or vacatur shall not affect the validity, perfection, priority, allowability, enforceability, or non-avoidability of any advances, payments, or use of cash authorized or made hereby or pursuant to the DIP Loan Documents, or Lien, claim, priority, or other DIP Protections authorized or created hereby or pursuant to the DIP Loan Documents.  Based on the findings set forth in this Final Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility, in the event any or all of the provisions of this Final Order are hereafter reversed, modified, vacated, or stayed by a subsequent order of this Court or any other court, the DIP Secured Parties and the Prepetition First Lien Secured Parties shall be entitled to the protections provided in section 364(e) of the Bankruptcy Code, and notwithstanding any such reversal, modification, vacatur, or stay, any use of Cash Collateral or any DIP Obligations or any DIP Protections (including the Prepetition First Lien Adequate Protection) incurred or granted by the Debtors prior to the actual receipt of written notice by the DIP Agent or the Prepetition First Lien Agent, as applicable, of the effective date of such reversal, modification, vacatur, or stay shall remain in full force and effect and be binding on all parties in interest and be governed in all respects by the original provisions of this Final Order (and shall maintain their respective priorities as provided by this Final Order), and the DIP Secured Parties and the Prepetition First Lien Secured

Parties shall be entitled to all of the DIP Protections (including the Prepetition First Lien Adequate Protection) and all other rights, remedies, Liens, priorities, privileges, protections, and benefits granted pursuant to section 364(e) of the Bankruptcy Code, this Final Order, or the DIP Loan Documents.  Notwithstanding anything to the contrary in this Final Order, following termination of consensual use of Cash Collateral, including following the occurrence and continuation of a Termination Event, nothing shall limit the Debtors' right to seek continued use of Cash Collateral on a nonconsensual basis and the DIP Secured Parties' and Prepetition First Lien Secured Parties' rights to contest any such request, subject to the terms and conditions of this Final Order, including, without limitation paragraphs 9 and 10 hereof.

(b)      Dismissal.  If any order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, then notwithstanding any such dismissal, (i) the DIP Protections (including the Prepetition First Lien Adequate Protection) and all other rights, remedies, Liens, priorities, privileges, protections, and benefits granted to any or all of the DIP Secured Parties and the Prepetition First Lien Secured Parties, respectively, shall remain in full force and effect and be binding on all parties in interest and be governed in all respects by the provisions of this Final Order (and shall maintain their respective priorities as provided by this Final Order) until all DIP Obligations and all Prepetition First Lien Obligations have been Paid in Full, and such order of dismissal shall so provide (in accordance with sections 105 and 349 of the Bankruptcy Code), and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such DIP Protections (including the Prepetition First Lien Adequate Protection) and all other rights, remedies, Liens, priorities, privileges, protections, and benefits granted to any or all of the DIP Secured Parties and the Prepetition First Lien Secured Parties, respectively.

74

(c)     <u>Survival of Final Order</u>.  The provisions of this Final Order and the DIP Loan Documents, any actions taken pursuant hereto or thereto, and all of the DIP Protections (including the Prepetition First Lien Adequate Protection), and all other rights, remedies, Liens, priorities, privileges, protections, and benefits granted to any or all of the DIP Secured Parties and the Prepetition First Lien Secured Parties, respectively, shall survive, and shall not be modified, impaired, or discharged by, the entry of any order confirming any plan of reorganization in any Case or Successor Case, converting any Case to a case under chapter 7, dismissing any of the Cases, withdrawing of the reference of any of the Cases or any Successor Cases or providing for abstention from handling or retaining of jurisdiction of any of the Cases or any Successor Case in this Court, or terminating the joint administration of these Cases or any Successor Case or by any other act or omission.  The terms and provisions of this Final Order, including all of the DIP Protections (including the Prepetition First Lien Adequate Protection) and all other rights, remedies, Liens, priorities, privileges, protections, and benefits granted to any or all of the DIP Secured Parties and the Prepetition First Lien Secured Parties, respectively, shall continue in full force and effect and be binding on all parties in interest notwithstanding the entry of any such order, and such DIP Protections (including the Prepetition First Lien Adequate Protection), and such other rights, remedies, Liens, priorities, privileges, protections, and benefits, shall continue in full force and effect in these proceedings and in any Successor Cases and after dismissal of any thereof, and shall maintain their respective priorities as provided by this Final Order.  Subject to the provisions of Paragraph 2(d) of this Final Order with respect to the treatment of the Roll-Up DIP Obligations, the DIP Obligations shall not be discharged by the entry of an order confirming any such chapter 11 plan, the Debtors having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.

18.     **Insurance Policies**.  The DIP Agent, the other DIP Secured Parties, the Prepetition First Lien Agent, and the other Prepetition First Lien Secured Parties shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees, as applicable, on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral, and the Debtors shall take such actions as are reasonably requested by the DIP Agent or the Prepetition First Lien Agent from time to time to evidence or effectuate the foregoing.

19.     **Surety Bonds**.    Notwithstanding anything to the contrary in the Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Continue their Surety Bond Program and (II) Granting Related Relief (the "Surety Bond Motion") and any order approving the relief sought therein, in the ordinary course of business, the Debtors may only (a) renew, amend, modify, supplement, and extend their existing Surety Bond Program, (b) obtain new Surety Bonds (as defined in the Surety Bond Motion), (c) maintain existing collateral, (d) post new or additional collateral, or issue letters of credit, (e) execute other agreements in connection with the Surety Bond Program (as defined in the Surety Bond Motion), and (f) continue to perform under the Surety Indemnity Agreements (as defined in the Surety Bond Motion), in each case of (a)-(f), with the consent of the DIP Agent.

20.     **Postpetition Hedging Arrangement**.  Prior to the date of the Interim Order, the Debtors terminated certain "sold call" transactions with the DIP Lenders or their affiliates (such transactions, the "Terminated Calls" and the unpaid early termination amounts and any other amounts which were payable by the Debtors in respect of such Terminated Calls, the "Terminated Call Exposure").  Upon entry of the Interim Order, the Borrower repaid the Terminated Call Exposure with the proceeds of the DIP Revolver Facility in an aggregate amount which did not exceed $60.3 million (the "Terminated Call Repayment").  The remaining existing sold call

transactions with the DIP Lenders or their affiliates (the "Prepetition Calls") together with (a) any other prepetition hedge transactions with the DIP Lenders or their affiliates that had not terminated prior to the date of the Interim Order ("Other Prepetition Hedges" and together with the Prepetition Calls the "Prepetition Lender Swap Contracts") and (b) any postpetition hedge transactions with DIP Lenders (the "Postpetition Lender Swap Contracts" and together with the Prepetition Lender Swap Contracts, the "Lender Swap Contracts"), constitute DIP Obligations secured by the DIP Liens and DIP Superpriority Claims.

21. **[Reserved]**

22. **Other Rights and Obligations**.

(a)     Expenses.  As provided in the DIP Loan Documents (and without limiting the Debtors' respective obligations thereunder), the applicable Debtors will pay all reasonable and documented expenses incurred by the DIP Agent (including the reasonable fees and disbursements of all counsel for the DIP Agent and any internal or third-party appraisers, consultants, advisors, and auditors engaged by or for the benefit of the DIP Agent and/or its counsel) in connection with the Cases, including the preparation, execution, delivery, and administration of the DIP Loan Documents, the Interim Order, this Final Order, and any other agreements, instruments, pleadings, or other documents prepared or reviewed in connection with any of the foregoing, whether or not any or all of the transactions contemplated hereby or by the DIP Loan Documents are consummated.

(b)     Notice of Professional Fees.  Professionals for the DIP Agent and the Prepetition First Lien Agent (including professionals engaged by counsel to the DIP Agent or Prepetition First Lien Agent, as applicable) and the Ad Hoc Noteholder Group (collectively, the "Lender Professionals") shall not be required to comply with the U.S. Trustee fee guidelines or

submit invoices to this Court, U.S. Trustee, the Committee or any other party in interest. Copies of summary invoices submitted to the Debtors by such Lender Professionals shall also be sent to the U.S. Trustee, counsel for the Committee, and such other parties as this Court may direct. The summary invoices shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses; *provided*, *however*, that such summary invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such summary invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine or other applicable privilege. If the Debtors, U.S. Trustee, or the Committee object to the reasonableness of the fees and expenses of any of the Lender Professionals and cannot resolve such objection within ten days of receipt of such invoices, then the Debtors, U.S. Trustee, or the Committee, as the case may be, shall file with this Court and serve on such Lender Professionals an objection (the "Fee Objection") limited to the issue of the reasonableness of such fees and expenses, and any failure by any such party to file a Fee Objection within such ten day period shall constitute a waiver of any right of such party to object to the applicable invoice. Notwithstanding any provision herein to the contrary, any objection to, and any hearing on an objection to, payment of any fees, costs, and expenses set forth in a professional fee invoice in respect of Lender Professionals shall be limited to the reasonableness of the particular items or categories of the fees, costs, and expenses that are the subject of such objection. The Debtors shall timely pay in accordance with the terms and conditions of this Final Order (a) the undisputed fees, costs, and expenses reflected on any invoice to which a Fee Objection has been timely filed and (b) all fees, costs, and expenses on any invoice to which no Fee Objection has been timely filed. All such reasonable unpaid fees, costs, expenses, and charges of the DIP

Agent that have not been disallowed by this Court on the basis of an objection filed by the Debtor, the U.S. Trustee, or the Committee (or any subsequent trustee of the Debtors' estates) in accordance with the terms hereof shall constitute DIP Obligations and shall be secured by the DIP Collateral as specified in this Final Order.  Any and all fees, commissions, costs, and expenses paid prior to the Petition Date by any Debtor to the DIP Agent or the other DIP Secured Parties in connection with or with respect to the DIP Facility, the DIP Credit Agreement, or the other DIP Loan Documents are hereby approved in full and non-refundable and shall not otherwise be subject to any Challenge.

(c)      Information Rights.  The Debtors shall substantially contemporaneously provide the advisors to the Committee and the Ad Hoc Noteholder Group, respectively, all required written financial reporting and other periodic reporting that is required to be provided to the DIP Agent or the DIP Lenders under the DIP Loan Documents and the DIP Orders; *provided that* to the extent such information constitutes material non-public information, such information will be shared (a) either (i) with the advisors to the Committee on a professionals' eyes only basis or (ii) with the advisors to the Committee for distribution to the members of the Committee pursuant to a confidentiality agreement in form and substance reasonably satisfactory to the Debtors, and (b) with the advisors to the Ad Hoc Noteholder Group on a professionals' eyes only basis provided that the information may be shared with any member of the Ad Hoc Noteholder Group subject to any applicable duties of confidentiality; *provided further* that, for the avoidance of doubt, the members of the Committee or the Ad Hoc Noteholder Group (except as otherwise provided in the Restructuring Support Agreement or First Day Orders) shall not be entitled to any consent right granted to the DIP Agent and/or any of the DIP Lenders with respect to such written financial reporting and other periodic reporting.

(d)     Binding Effect.  Subject only to Paragraph 5 above, the provisions of this Final Order, including all findings herein, and the DIP Loan Documents shall be binding upon all parties in interest in these Cases and any Successor Cases, including the DIP Secured Parties, the Prepetition First Lien Secured Parties, the Committee, and the Debtors and their respective estates, successors, and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary or responsible person appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), whether in any of the Cases, in any Successor Cases, or upon dismissal of any such Case or Successor Case; *provided*, *however*, that the DIP Secured Parties and the Prepetition First Lien Secured Parties shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 or chapter 11 trustee or other responsible person appointed for the estates of the Debtors in any Case or Successor Case.

(e)     No Waiver.  The failure of the Prepetition First Lien Secured Parties or the DIP Secured Parties to seek relief or otherwise exercise their rights and remedies under this Final Order, the Prepetition First Lien Loan Documents, the DIP Loan Documents, or otherwise (or any delay in seeking or exercising same) shall not constitute a waiver of any of such parties' rights hereunder, thereunder, or otherwise.  Nothing contained in this Final Order (including the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims, or defenses available in law or equity to any Prepetition First Lien Secured Party or any DIP Secured Party, including rights of a party to a swap agreement, securities contract, commodity contract, forward contract, or repurchase agreement with a Debtor to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of a Debtor to contest such assertion).  Except

80

as prohibited by this Final Order, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, any right or ability of the Prepetition First Lien Secured Parties or the DIP Secured Parties under the Bankruptcy Code or under non-bankruptcy law to (i) request conversion of the Cases or any Successor Cases to cases under chapter 7, dismissal of the Cases or any Successor Cases, or the appointment of a trustee or examiner in the Cases or any Successor Cases, or to oppose the use of Cash Collateral in any Successor Case or on terms other than those set forth in this Final Order, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, any chapter 11 plan or plans with respect to any of the Debtors or seek early termination of the Debtors' exclusive rights to propose a plan under the Bankruptcy Code, or (iii) except as expressly provided herein, exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Secured Parties or the Prepetition First Lien Secured Parties, respectively, under the DIP Loan Documents or the Prepetition First Lien Loan Documents, the Bankruptcy Code, or otherwise.  Except to the extent otherwise expressly provided in this Final Order or by law, neither the commencement of the Cases nor the entry of this Final Order shall limit or otherwise modify the rights and remedies of the Prepetition First Lien Secured Parties under the Prepetition First Lien Loan Documents or with respect to any non-Debtor entities or their respective assets, whether such rights and remedies arise under the Prepetition First Lien Loan Documents, applicable law, or equity.

(f)     <u>No Third Party Rights</u>.  Except as explicitly provided for herein or in any DIP Loan Document, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or direct, indirect, or incidental beneficiary.  In determining to make any loan (whether under the DIP Credit Agreement or otherwise) or to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the

DIP Loan Documents, the DIP Secured Parties and the Prepetition First Lien Secured Parties shall not (i) be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar federal, state or local statute or regulation) or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates.

(g)     No Marshaling.  Neither the DIP Secured Parties nor the Prepetition First Lien Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition First Lien Collateral, as applicable.  Notwithstanding the foregoing or anything to the contrary in this Final Order, the DIP Loan Documents, or the Prepetition First Lien Loan Documents, the DIP Secured Parties and the Prepetition First Lien Secured Parties shall use commercially reasonable efforts to satisfy the DIP Obligations and the Prepetition First Lien Obligations (including, for the avoidance of doubt, the Prepetition First Lien Adequate Protection Superpriority Claims) first from the liens and proceeds of all Prepetition First Lien Collateral and DIP Collateral, as applicable, other than proceeds of Avoidance Actions and commercial tort claims, and second from the proceeds of Avoidance Actions and commercial tort claims.

(h)     Amendments.  The Debtors are authorized and empowered, without further notice and hearing or approval of this Court, to amend, modify, supplement, or waive any provision of the DIP Loan Documents in accordance with the provisions thereof, in each case unless such amendment, modification, supplement, or waiver (i) increases the interest rate (other than as a result of the imposition of the default rate), (ii) increases the aggregate lending commitments of

all of the DIP Lenders in respect of the DIP Facility by more than $5,000,000, (iii) shortens the Maturity Date (as defined in the DIP Credit Agreement), or (iv) adds or amends (in any respect unfavorable to the Debtors) any Event of Default. No waiver, modification, or amendment of any of the provisions of the DIP Loan Documents shall be effective unless set forth in writing, signed by or on behalf of all the Debtors and the DIP Agent (after having obtained the approval of the requisite DIP Secured Parties under the DIP Credit Agreement) and, except as provided herein, approved by this Court; *provided* that any amendment, modification, or extension of this Final Order shall require five (5) business days' prior written notice to counsel to the Ad Hoc Noteholder Group and counsel to the Committee. Notwithstanding the foregoing, no waiver, modification or amendment of any of the provisions of this Final Order or the DIP Loan Documents that would directly and adversely affect the rights or interests of the Prepetition First Lien Secured Parties, as applicable, shall be effective unless also consented to in writing by the Prepetition First Lien Agent on behalf of the Prepetition First Lien Secured Parties.

(i)     <u>Inconsistency</u>.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents and of this Final Order, the provisions of this Final Order shall govern and control. In the event of any inconsistency between the terms or conditions of this Final Order and the terms or conditions of any other order entered by this Court in the nature of a First Day Order, the provisions of this Final Order shall govern and control.

(j)     <u>Enforceability</u>.  This Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024 or any other Bankruptcy Rule, any Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final

Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Final Order.

(k)    <u>Reservation of Rights</u>.    Nothing in this Final Order shall be deemed to constitute the consent of the DIP Secured Parties or the Prepetition First Lien Secured Parties, and each of the foregoing expressly reserve the right to object to entry of any order of the Court that provides for the sale or other disposition of all or substantially all of the assets of the Debtors (or any other sale or other disposition of assets of any of the Debtors outside the ordinary course of business) to any party unless, in connection and concurrently with any such event, the proceeds of such sale are or will be sufficient to Pay in Full the DIP Obligations, the Prepetition First Lien Obligations, and the Prepetition First Lien Adequate Protection and all of the foregoing are Paid in Full on the closing date of such sale.

(l)    <u>No Requirement to Accept Title to Collateral</u>.  The DIP Secured Parties and the Prepetition First Lien Secured Parties shall not be obligated to accept title to any portion of the DIP Collateral or the Prepetition First Lien Collateral in payment of any of the DIP Obligations or Prepetition First Lien Obligations, as applicable, in lieu of payment in cash or cash equivalents, nor shall the DIP Secured Parties and the Prepetition First Lien Secured Parties be obligated to accept payment in cash or cash equivalents that is encumbered by any interest of any person or entity other than the DIP Secured Parties or the Prepetition First Lien Secured Parties, as applicable.

(m)    <u>Headings</u>.  Paragraph headings used herein are for convenience only and are not to affect the construction of, or to be taken into consideration in, interpreting this Final Order.

23.    **Preservation of Rights; No Nonconsensual Priming.**

(a)     Nothing in this Order shall enlarge or impair (i) the rights of the Insurance Companies under any letter of credit, revocable or irrevocable, as the case may be, issued at the request of the Debtors prior to the Petition Date and (ii) the rights of the Insurance Companies with regard to any collateral provided in connection with such letters of credit.

(b)     For the avoidance of doubt, no DIP Lien or Prepetition First Lien shall, on a nonconsensual basis, prime any valid, perfected, enforceable, and non-avoidable senior lien (as such term is defined in section 101(37) of the Bankruptcy Code) (including any properly-perfected senior lien under section 546 of the Bankruptcy Code) or encumbrance possessed by Ohio River Collieries Company, John & Jennifer Chartier, Roger & Billi Kemp, Shawn Miller, Larry & Alexa Parker, Gorden Price, Roger & Brenda Schnegg, or Dennis & Denise Wolgemuth (collectively, the "Specified Royalty Parties") or the Insurance Companies, if any, in existence as of the Petition Date.  All claims, if any, of the Specified Royalty Parties that royalty proceeds are not property of the Debtors' estates, and any defenses the Debtors have to such claims, are preserved.

24.     **Interim Order**.  Except as specifically amended, supplemented, or otherwise modified hereby, all of the provisions of the Interim Order shall remain in effect and are hereby ratified by this Final Order.  In the event of any inconsistency between the terms of this Final Order and the terms of the Interim Order, the terms of this Final Order shall govern.

25.     **Retention of Jurisdiction**.  This Court has and will retain jurisdiction to enforce this Final Order according to its terms.

  **Signed:  December 18, 2020.**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**